### Burtis *vs.* Dodge.

Where an executor, about a year after the granting of letters testamentary, tendered to one of the residuary legatees so much of his share of the residuary estate as the executor was able to distribute at that time; which such legatee refused to receive until he should be paid the whole amount of his share; *Held,* that the legatee was not entitled to interest on the sum thus tendered.

Where a residuary legatee is informed of the fact that a final dividend has been made, by the executor, to the several residuary legatees, and that the executor is ready to distribute the amount among them, and where such legatee is an adult, and competent to attend to his rights, it is not the duty of the executor to go to him and tender the amount of his distributive share; especially where the legatee has previously refused to receive a portion of his share, when it was tendered to him.

Where an executor is liable to be called upon at any time, by a legatee, for the

Burtis *v.* Dodge.

amount of his legacy, so that such executor cannot safely invest the money, he will not be required to pay interest thereon; in the absence of any proof that he has mingled the trust fund with his own moneys, or that he has used it in any way so as to make it produce interest.

Where no time is fixed in a will for the payment of a legacy, it is payable at the expiration of one year from the time of the testator's death, and will not commence drawing interest until that time.

An executor is not entitled to charge the estate with a counsel fee, paid by him upon the final settlement of his account before the surrogate; or for drawing up his accounts in a proper and legal form on such final settlement.

A surrogate is not authorized to make an arbitrary allowance to an executor, in lieu of the compensation directed by the statute to be paid to advocates and proctors in surrogate's courts; where the same is to be paid as costs in the suit, either by the adverse party, or out of the fund in litigation.

An executor is not entitled to commissions on the share of a legatee, which share the will directs to be deducted from the valuation of a farm, specifically devised to the legatee, upon his paying to the executors the residue of the appraised value of such farm.

THIS was an appeal by one of the six residuary legatees of J. Burtis, deceased, from the sentence or decree of a surrogate, upon the final settlement of the account of the acting executor. The principal ground of complaint, stated in the petition of appeal, was that the executor had not been charged with interest upon the balance in his hands, belonging to the appellant. But the appellant also assigned for error, in the items of the account, that the surrogate had allowed the executor $22,50 paid to the daughter-in-law of the testator, which was an over payment beyond the amount of her legacy; and also that he had erroneously allowed the charge of $50 which, in the account presented to the surrogate, the executor had charged as a fee to his counsel upon the final settlement. In that account the executor had also charged the further sum of $50 for anticipated expenses; and $30 for commissions on the share of one of the legatees, which by the directions in the will was to be deducted from the valuation of a farm; which farm was specifically devised to her, upon payment to the executors of the residue of the appraised value. These two charges the surrogate decided to be erroneous. But instead of adding one-sixth of each charge, to the balance due to the appellant as stated in

the account of the executor, he added thereto the whole $80. And the respondent in his answer to the petition of appeal, specified the error in these two items, against him, as he was authorized to do by the 118th rule of this court; in the nature of a cross appeal.

*H. G. Onderdonk*, for appellant. 1. The charge for $50 counsel fees was erroneously allowed to the executor. It is settled by the case of *Halsey* v. *Van Amringe*, (6 *Paige's Rep.* 12,) that there can be no arbitrary allowance made for counsel fees; but that the solicitor and counsel are entitled to their taxable fees, and no more. In the present instance, the charge for counsel fees is not made for services rendered, or advice given, to the executor during the continuance of his trust, but it was paid for drawing off the accounts in a legal form, and for services on attendance before the surrogate on the final settlement. Under that decision the charge was incorrect. 2. The charge of $22,50 paid by the executor to Sarah Burtis, was also erroneously allowed. The only reason given by the executor, and which was sanctioned by the surrogate, is that the testator had been in the habit of paying her that sum annually, and he, the executor, considered it due to her. There is no evidence of the fact, except the executor's statement. Even were it proved, it is still but a habit. There was no obligation upon the testator so to do. It was a mere act of kindness or generosity on his part, and no legal liability to pay devolved upon the testator merely from a repetition of it. If there was no legal obligation on the part of the testator, there certainly was none on the part of the executor. He had no right to make charitable contributions, and then charge them to the estate, because the testator had been in the habit of so doing. Moreover, the very fact of the legacy being left to Sarah Burtis, shews that the testator intended it in lieu of the annual payment; and contemplated the inability of the executor to continue it after his death. He bequeaths a sum in gross, instead of an annual payment. There exists the same propriety for the payment of this sum every year, as for making it a single time. It was not a debt or

claim upon the estate; and the allowance of it to the executor was therefore erroneous. 3. The appellant is entitled to interest upon his share, as residuary legatee. It is admitted that $468,36 was due and payable to him, as residuary legatee, on the fourth of May, 1833; and he claims interest on that sum from that day. The rule of law in regard to the allowance of interest against executors and trustees, is too well settled in favor of legatees and cestuis que trust, to need much argument. The rule is clearly established, that interest is chargeable on the annual balances in an executor's account; unless such balances are necessarily kept in his hands for the purposes of the estate. (*Darrell* v. *Eden,* 3 *Dessau. Rep.* 241. 4 *id.* 369, 463 *and* 555. 4 *Bibb,* 266.) The same rule should be adopted in a case of a balance on a final settlement; inasmuch as charging interest on annual balances, is laying down a much more strict rule, and treating the executor with much more severity. In another case it was held that an executor who does not render an account, although he swears that he has not used the fund, nor loaned it to others, but has kept it on hand, is chargeable with interest from the day of the receipt of the trust money. (*Arnold* v. *Lumey,* 1 *Dev. Eq.* 369.) In *Gray* v. *Thomson,* (1 *John. Ch. Rep.* 84,) the trustee was charged with interest from the day the property was converted into cash. This, say the court, is the rule laid down in relation to negligent trustees. If executors retain money in their hands without good reason for so doing, they will be charged with the interest which they might have made thereon. (*Stephens* v. *Van Buren,* 1 *Paige,* 480. *See also Kellett* v. *Rathbun,* 4 *id.* 110.) Executors have also been held chargeable with interest where they have neglected to invest. (*Schieffelin* v. *Stewart,* 1 *John. Ch. R.* 620.) The rule on this subject is, that where an executor retains money in his hands, which by investing he might make productive, he is chargeable with interest. If he use the funds, or neglect to pay them over, or if he do not invest so as to make them productive, he is chargeable with interest. (11 *Vesey,* 58, *cited in* 1 *John. Ch. R.* 510.) And if he finds difficulty in investing, it is his duty to apply to the court for instructions. (*See also Stork* v.

Burtis *v.* Dodge.

*Stork*, 1 *Dessau.* 193 *and* 219.) These cases show the rigor with which trustees and executors are treated. They are charged with interest where they might have invested, and where they have unnecessarily kept funds on hand idle. Whenever the income or annual product of the estate is sufficient to defray the necessary expenditures and keep down the incumbrances, it is their duty to keep the surplus invested. If there be no necessity, as in the present case, to keep it on hand for future contingent expenses, it is their duty to pay over that surplus, and distribute it among the parties entitled.

The courts have in numerous instances inferred the breach of trust, from the lapse of time. In the case of *Turner* v. *Williams*, (7 *Yerger*, 172,) the court lay down the following broad rules, which are applicable to the present case in all its aspects. "Where an executor receives interest; where he uses the money of the estate for his own purposes; where he keeps the money by him without a reasonable ground for doing so; where by long delay in settling his account, the use of the money may be inferred, in all such cases interest will be charged, with a view to reach the profits, which, from the facts, will be inferred and presumed to have been made. So in 1 *John. Ch. R.* 510, the court inferred from the lapse of time, that the trustee had mixed the money with his own, and charged him with interest. In Maryland, the courts have laid down an equally broad rule. Where an executor negligently leaves the estate unsettled, and then suffers the accounts to remain uncollected, &c. he is justly chargeable with interest. (*Lyles* v. *Halton*, 6 *Gill & John.* 122.) The equity courts of South Carolina, whose decisions always have been treated by our own judiciary with great respect, have added the weight of their opinions to the already established rule. In *Jenkins* v. *Fickley*, (4 *Dessau.* 369,) the court says, executors having balances in their hands for several years are chargeable with interest." In *Gray* v. *Tompkins*, (1 *John. Ch. R.* 84,) the chancellor said, "from length of time, the presumption is that the executor appropriated the funds to his own use." If, therefore, lapse of time in settling accounts, or unnecessary detention of funds without paying or investing, are prima facie

Burtis v. Dodge.

evidence of neglect and fraud, and presumed a breach of trust, it is the duty of the executor to destroy and rebut that inference. It is not incumbent on us to prove that he has not retained the money separate from his own, or that he has not been ready to pay it, nor in fact to prove the negligence. But it is his duty to prove where the money was, and that he was ready to pay it. In *Ratcliff* v. *Green*, (1 *Vernon*, 196,) the court ruled that it was the duty of the executor to prove that he had kept the money separate. (*See also Dunscomb* v. *Dunscomb*, 1 *John. Ch. R.* 510.) There is no evidence to prove that a tender of the $250 was ever made. But even admitting that this sum was tendered before the whole share was due, the executor is bound to tender and pay over the whole when it is all due, or show some good legal excuse for not so doing. A tender is no excuse. It was the duty of the defendant to pay over the money. In 1 *John. Ch. R.* 510, the court held that being ready, was no excuse for the executor. If an executor would avoid being charged with interest he may either 1. Pay over the money, (not offer or tender it;) 2. Invest it, until he chooses to settle his account finally; or 3. He may have his account finally settled, and his trust closed and discharged. At any time after eighteen months from the granting of letters testamentary he has the privilege of rendering a full and final account. In this case, the eighteen months had elapsed before the fourth of May, 1833. At that time, therefore, when he admits that he had this amount due us ready to be paid, it was his duty to bring his account before the surrogate. If, however, a tender in a case of this kind is a good defence to the claim for interest, we insist that the tender was not good and perfect. A tender should be open, clear; and above all, a manual tender. There must be an actual offer to pay, and an actual production of the money. A sum also must be specified, even if a tender be refused because more is due. Such refusal does not dispense with the actual production of the amount admitted to be due. (6 *Wend.* 22.) It is unsafe to dispense with the actual production, by the hands of the tenderor. (15 *Wend.* 637.) Here the evidence shows that no money was produced. Moreover, a tender must be kept good, by showing

Burtis v. Dodge.

that the money has always been ready to be paid over. No pretence is made in this cause that this has been done. 3. As to the rate of interest which should be allowed to the appellant. It is well established that when the estate has been used, or mixed with the funds of the executor or trustee, compound interest is chargeable. The lapse of twelve years justifies the legal presumption that the executor has applied the funds to his own use. If he wishes to restrict himself to the actual profits he has made, he can do so by disclosing those profits. (1 *John. Ch.* 134.) Not having done so, he must be accountable for the greatest amount which a careful and cautious man would have made. The appellant is entitled to interest on $468,36 from May 4th, 1833, and to interest on $250 of that sum from the fourteenth of July, 1832, when the other legatees were paid off, until May 4th, 1833, when the whole sum was due to him; and annual rests should be made in the whole computation, so as to give him compound interest.

*W. K. Thorne,* for respondent. 1. As to the allowance of the counsel fee of $50: For his own protection, and for the convenience of the court, the executor was justified in engaging professional aid to complete his accounts. 2. As regards the payment to Ann Burtis, it is but a minor point in this controversy, and involving no important question. The executor conscientiously considered that he was carrying out the wishes of the testator in paying what the testator had always paid; and there was a moral obligation, which to an honorable man is as imperative as a legal one. 3. As to the question of interest. The $250 was offered to the legatee when his brothers and sisters received their share; and if so, and the executor has never since that time been called on for it, the presumption is that the legatee left it in his hands to be called for without notice, when he needed it, and if so, the executor should not be charged with interest. He could not invest it, lest a demand should be made the next day. An executor is not chargeable with interest on all sums received by him and not applied to the purposes of the estate; provided he has reasons which rendered it

proper to retain them in his hands. (*McCaw* v. *Blewit*, 1 *Bailey's Eq. Rep.* 98.) To charge him with interest is virtually charging him with imaginary values; which is manifestly absurd, and contrary to equity; and it cannot be done unless it is shown that he was grossly negligent and wilfully in fault. (14 *John. Rep.* 526.) This court, in *Jacot, adm'r &c.* v. *Emmett, adm'r &c.* (*a*) held that where an administrator mixes the money belonging to the estate of his intestate with his own, and uses it so that he has it not on hand when he is called on for payment, he may be charged with interest. But that a mere neglect by an administrator to invest money which he may be called upon to pay over to the distributees at any time, will not subject him to the payment of interest, if the money was kept ready to be paid over when called for. That case seems conclusive as to the question of interest; for it appears that the executor here has always been ready to pay the legatee his legacy. If it could not have been collected, or even if he had ever demanded it, there would then be some show of neglect, and some reason for inflicting the punishment on the executor in the payment of the interest. (*See also* 2 *Dallas*, 183.) The cases referred to in 1 *John. Ch. Rep.* 84, 510, 620, are none of them like this. In those cases it appeared that the executor had made use of the money and mixed it with his own funds, but particularly had made no effort to get rid of the money by offering payment to the persons entitled to receive it. In those cases where an executor is making use of money, it is but just that he should not make a profit out of the estate; but here the executor took great pains to rid himself of the money; and there is no pretence of his using it for his own benefit. At all events there is no proof. In the cases in *Ram on Assets*, 512, the court only make an executor pay interest when he was directed by the will to invest money, and instead of so doing, he keeps it himself. Indeed, all the cases are decided on the principle that an executor must pay interest when he has not done his duty, or has violated his trust, either by not investing

(*a*) In Chancery, Aug. 6, 1844.

as directed, or by mixing and using the money as his own, so as not to be able to pay when called on. It would be unjust, in this case, to compel the payment of interest for money kept on hand for the express purpose of paying this legatee, for a length of time that in any case, not a trust, would bar the appellant's right to recover at all. A legacy payable at a certain time will, notwithstanding, only carry interest from the time it is demanded. (*Joliffe* v. *Crew, Prec. in Chan.* 11. *Knapp* v. *Powell, Idem.* 1 *Ves.* 310. 2 *Id.* 563. 2 *Freem. Rep.* 1.) The cases cited by appellant's counsel to show that from the length of time, the use of the money by the executor was to be inferred, and that consequently he was chargeable with interest, are none of them applicable in the present instance. The money in those cases seems to have been retained for no visible substantial purpose whatever. Neither is the case of *Lyles* v. *Halton,* (6 *Gill & John.* 122,) at all applicable. There the executor negligently left the estate unsettled, and then suffered the account to remain unpaid; neither of which acts is the respondent guilty of. He settled the estate, paid all the legatees, and would long since have closed up the business but for the refusal of the appellant to receive the $250. In the case of *Stephen* v. *Van Beuren,* (1 *Paige,* 480,) it was decided that if an executor retains the money of infants for several years, without good reason for so doing, he will be charged with the interest which he might have received thereon. In that case there was a direct application for payment on the part of the guardian of the children, and a positive refusal on the part of the executor to pay. In the case before the court, there was neither a demand nor refusal; but on the contrary, an offer of payment was made by the executor, which offer was met on the part of the legatee by a contemptuous refusal. As the appellant had a right to call on the executor, any day, for the money, or to sue him forthwith, the executor was obliged to keep it ready for him on demand; and thus was unable to make any investment.

*H. G. Onderdonk,* in reply. The case of *Halsey* v. *Van Amringe,* (6 *Paige,* 12,) disposes of the question of counsel fees.

Burtis *v.* Dodge.

Even if the $50 was allowed for services rendered, and advice given to the executor, in the exercise of his duties, as well as on the rendering his account, this would not alter the case. Such was not the fact, however, as appears from the testimony of the executor. Even admitting that the $250 was tendered, it does not vary the case. It is not pretended that the whole sum of $468,36 was ever offered. The argument of the respondent's counsel affects only the sum of $250; and he treats the case as if that $250 was the whole amount involved in controversy.

The case of *Jacot* v. *Emmet*, cited by the respondent, is far from deciding the case in his favor. One part of the decision is by no means a new doctrine, viz. that where an executor uses trust money and mixes it with his own, so that he has it not when called for, he is then chargeable with interest. The correctness of that doctrine is admitted, and we ask the court to apply the rule in the present instance. That case also decided " that a mere neglect to invest money which the executor may be called on to pay over at any moment, will not subject the executor to interest, if the money was kept ready to be paid over when called for." The decision is confined to the case where an executor is liable to be called on for payment at any moment. Where a party is in daily expectation of being compelled to pay, it would be unreasonable to exact from him that he should always have the money ready to be paid, and that he should at the same time keep it invested. The respondent's counsel rests his defence entirely on this ground. But the facts of this case show a different state of things. He admits that he had funds in his hands on the 4th May, 1833, and that he was at that time in duty bound to pay them over. This is the ground on which we ask interest. The appellant is a residuary legatee. He has no claim for payment until all the debts, legacies and charges of every kind are paid off and discharged. A legacy, other than a residuary legacy, may be required after one year from the issuing of letters, but the payment of a residuary legacy cannot be enforced until the whole estate is closed; for until that time the account or share cannot be determined. Therefore, though an executor is legally bound to pay, when he has discharged all

Burtis *v.* Dodge.

other claims, still the residuary legatee cannot know when that period has arrived. Though the executor may be legally liable to be called on for payment as soon as it is his duty to pay. off the legacy, still he may, and in this case has entirely placed it out of the power of the legatee to call; by keeping him in ignorance of his movements, and of the condition of the estate. Undoubtedly. we have a right to cite him to an account; but how could we know when to cite him? We could not tell when he had collected all the demands due the estate, and paid all the demands against it; and until then the amount of our share of the residue could not be ascertained; but the statute nowhere gives the legatee a right to demand a final settlement. Although in this case the event has proved that we had a legal right to call on the executor for payment as long ago as May, 1833, still we had no means of learning, and did not learn that fact until the final settlement; which after the lapse of twelve years, he chose to cite us to attend. We contend that it was his duty in May, 1833, to let us know that the money was in his hands, ready to be paid over.

The doctrine contended for by the respondent's counsel, that because he should have paid the money twelve years ago, and because we have suffered him to use it that length of time, he should now be exempted from interest, strikes us as being extremely absurd. Again; though the doctrine laid down by his Honor in *Jacot* v. *Emmet* might be just and equitable, where the length of time was trifling, we insist that the extraordinary lapse of twelve years entirely varies the case. What may be naturally and reasonably presumed where only a few months had elapsed, would become unreasonable and forced, in a case where twelve years had elapsed. We look upon the lapse of time as one of the most suspicious features in this case. But there was another and most important point in the above decision, which we will now consider. It was added to the rule above laid down by his Honor in the case of *Jacot* v. *Emmet*, as an indispensable condition to the exemption of the executor from interest, that he should have held the money ready in his hands to be paid over. The counsel says that we require him

to keep it invested, and at the same time to have it ready to pay over when called for. We have not made, and do not make, any such unreasonable request. He says if we had a right to call on him for payment, he was obliged to keep it ready for us. Undoubtedly; all that we ask is, that he should prove that he did one or the other; that he either kept it ready to pay us, or that it was invested. That he kept it ready was not proved, and that it was invested is not pretended. Though the principle of the case of *Jacot* v. *Emmet* is just and equitable, still the respondent does not bring himself within its terms. If he had shown that he had been liable to be called on for payment at any time, and that he had kept the money ready, the case had been different. But in the absence of any proof that he did keep the money ready, and with the positive testimony that neither he nor any other person ever notified us that he had the funds ready to be distributed, he can make no claim to the application of the rule laid down in that case. He relies entirely on that decision, and if he fails to bring himself within its terms, his defence fails. '

We are entitled to interest at seven per cent. on our admitted demand ($468,36) from May 4, 1833, at least; on which day, as is now discovered, the executor had that amount of our money in his hands; and since which time he has never notified us of his readiness to pay it over, nor tendered that or any other amount to us, nor cited us to attend any surrogate or other officer to settle upon and fix the amount of this residue due us. And we further insist, that the interest thereon should be calculated by annual rests, so as to give us compound interest; and that we are entitled to a decree reversing the decree of the surrogate, so far as it omits to allow us interest on the $468,36, and so far as it allows to the respondent the $50 paid to counsel, and the $22,50 paid by the executor to Sarah Burtis without authority.

THE CHANCELLOR. I think the surrogate was right in supposing that the acting executor ought not to be charged with interest, on the amount due to the appellant as one of the residuary legatees. The whole of the estate which came to the hands

of the acting executor, including the $3000 which one of the daughters received in the farm at a valuation, was something more than $18,000; of which each residuary legatee was entitled to receive less than $500, after the whole estate should have been collected and converted into money so as to be properly distributable among them. Within about one year after the granting of letters testamentary, the acting executor had so far succeeded, in executing his trust, as to be able to make a distribution of $250 of the residuary estate to each legatee. He thereupon paid that amount to each of the other legatees, and tendered the same amount to the appellant; who for some reason, which he does not explain, refused to receive it, until the whole residue should be ascertained and paid. This offer to pay more than half of the appellant's residuary share was immediately after the expiration of the year, during which the executor was forbidden by law to pay even the general legacies. (2 *R. S.* 90, § 43.) And it was about six months previous to the time when the appellant was authorized to ask for an account and distribution of the residuary estate. The appellant therefore had no ground for declining to receive this part of his distributive share because the executor did not then render a final account and pay him in full. About ten months after this offer was made, the acting executor had succeeded in getting in the whole estate; and he then made a statement of his accounts, and paid the balances due to the other five residuary legatees, in full. He was also prepared to pay off the whole residuary share of the appellant, and repeatedly sent word to him to that effect, by his brother; who was also an executor to whom letters testamentary were granted. To be sure, that brother does not recollect that he gave that information to the appellant. But if either executor was bound to go to the appellant and give him this information, he should have communicated the message to his brother; or he should have informed the acting executor that he had not done so, and that the appellant was ignorant of the fact that a final dividend had been made to the residuary legatees.

I do not, however, believe that the appellant was ignorant of

that fact; as the parties all appear to have lived in the same neighborhood. And as the legatee was an adult, and perfectly competent to attend to his own rights, I do not think it was the duty of the acting executor to go to him and make a formal tender of the money; especially after what had occurred in relation to the $250. If the distributive share had belonged to an infant, who was ignorant of his rights, or incompetent to attend to them, there might be some reason for charging the executor with interest, upon money which he had kept in his hands for a great length of time without investment; and without applying to the proper tribunal for directions in relation to the fund. But, in this case, the executor had no right to invest the residuary share of the appellant, who was at hand and might call upon him for payment of it at any moment. And if he had so invested it, the investment would have been at the risk of the executor; who might have been compelled to pay the money immediately, even if it had been invested in the best of securities. None of the cases cited, where executors have been charged with interest for neglecting to invest moneys, or for keeping them on hand, contrary to their duties as faithful trustees of the fund, are therefore applicable to this case. Nor is there a particle of proof here to induce a belief that the executor had mingled the trust fund with his own moneys, or used it in any way, so as to make it produce any interest. And when the appellant examined him on oath before the surrogate, and might have compelled him to disclose the fact if it was so, he objected to any answer from the executor to show that the fact was otherwise. There is no doubt, therefore, that if this residuary legatee had gone to the acting executor, at any time after the 4th of May, 1833, and asked for his distributive share of his father's estate, or had sent to him by any other person, authorized to receive it, he could have had his money at once. And if he had done so, and had even insisted upon his one sixth of the small amount claimed as an over payment to his sister-in-law, the executor would probably have paid that also; and the whole expense of the final accounting before the surrogate would have been avoided.

Burtis v. Dodge.

In relation to that item, the executor unquestionably acted in good faith, believing it was proper for him to pay it; as the testator had been in the habit of making the widow of his deceased son a periodical allowance of that amount. But the payment was in fact unauthorized; as the legacy given by the will was all she was entitled to receive, as a bounty merely, after the testator's death. And as no time was fixed by the will for the payment of her legacy, it could not draw interest until the expiration of one year; when it was legally due, under the provision of the revised statutes before referred to.

Neither was the executor entitled to charge the estate with a counsel fee upon the final settlement of his account before the surrogate, or for drawing up his accounts in a proper and legal form on such final settlement. The whole was a part of the proceeding for the settlement of the account of the executor. And the statute having fixed the allowances which are to be made to advocates and proctors in surrogates' courts, when they are to be paid as costs in the suit, either by the adverse party or out of the fund in litigation, the surrogate is not authorized to make an arbitrary allowance to the executor in lieu thereof. (*Laws of* 1837, *p.* 536, § 70. *Halsey* v. *Van Amringe,* 6 *Paige's Rep.* 12.) Here the surrogate had the power to award costs to the executor, to be paid out of the estate of the testator; or by Burtis personally, if he thought this final accounting had been rendered necessary by his perverseness. (2 *R. S.* 223, § 10.) He has not thought proper to do so in this case, except to the extent of his own fees; which he has awarded against Burtis personally, by deducting them from the balance found due to him upon the accounting. If it was a proper case to allow the executor for the expenses of his proctor and advocate, upon the accounting, the surrogate should have taxed their costs at the rates of allowance fixed by the act of 1837. And when so taxed he should have deducted the whole amount, or the one sixth thereof only, from the balance found due to Burtis upon the accounting; according as he should have intended to charge the costs upon Burtis personally, or on the estate of the testator generally. The one sixth of these two items, objected to in the petition of appeal,

amounting together to the sum of $12,08, must be added to the $548,36, ascertained by the surrogate's decree as the distributive share of the appellant.

The surrogate, however, has made a much greater mistake in favor of the appellant. For, instead of allowing him only one sixth of the executor's over-charge for commissions, and of the $50 contingently retained to meet further expenses, he has allowed the appellant the whole of those two items. This was unquestionably an inadvertence on the part of the surrogate; and if the appellant had been contented with the decree as it stood he would have had the benefit of it, unless the executor had thought proper to hazard the costs of an appeal for so small an amount. But the executor had the right, under the provisions of the 118th rule, to bring it before this court, by his answer to the petition of appeal. The error in relation to those two items must therefore also be corrected; although the effect of such allowance will be to reduce the amount awarded to the appellant. Deducting five sixths of these two items, which is $66,67, from the sum decreed to the appellant by the surrogate, and adding to the balance the $12,08, for the one sixth of the counsel fee and of the overpayment to the testator's daughter in law, leaves due to the appellant $482,26. The decree of the surrogate must therefore be modified so as to direct the executor to pay that amount only.

And as the appellant has in effect wholly failed as to his appeal, he must pay the respondent's costs upon such appeal.