MARY WOODGATE and THOMAS FORSTER, Executors, etc., of
JOHN H. WOODGATE, deceased, Appellants, *v.* ABRAHAM K.
FLEET and MARTHA E. FLEET, his wife, BENJAMIN RUSH-
MORE, and as survivor of JAMES HERRIMAN, both commis-
sioners for loaning certain moneys of the United States
for the county of Queens, and ABRAHAM AYRES, Res-
pondents.

The parties to a judgment are concluded, or estopped, thereby only as to
the facts or law material to the issues, and directly involved in the litiga-
tion.

A conveyance of real estate upon trusts, some of which are valid, while
others are inoperative, vests an interest in the trustees to the extent of the
valid trusts, leaving the residue of the estate in the grantor.

A reversionary interest in real estate may be the subject of levy and sale
upon execution, although the extent of such interest cannot be ascer-
tained at the time of such sale, and the whole reversion is contingent
upon the happening of events, which may never occur.

Accordingly, upon the following facts: In 1834 F. conveyed certain real
estate to trustees upon trusts, 1. To apply the rents and profits to the
support of M., his wife, and J., his son, and of any children who should
be thereafter born. 2. Upon J. arriving at full age, to convey to him and
to M. (if she should then be living and unmarried) their respective pro-

HAND — VOL. V.        1

portions of the estate, such proportions to be ascertained by the number of children then living, it being intended that M., J., and such after born children should share equally; if any one die, his share to go to the survivors equally. 3. If M. should then be married, the trust to continue as to her share during the joint lives of herself and her husband; and if she should die before her husband, her proportion to go to her heirs. 4. The shares of such after born children to be held in trust for them respectively until they should respectively become of full age. In 1835 the trustees executed an instrument under seal, purporting to renounce the trust and reconvey the property to F. May, 1837, judgment was recovered against F., and *fi. fa.* issued thereon. June, 1837, F. and M., his wife, executed a mortgage of the premises to the loan commissioners. October, 1837, the plaintiff recovered a judgment against F., and *fi. fa.* was issued thereon. November, 1838, all the interest of F. was sold to the plaintiff by the sheriff under the two executions, and the plaintiff afterward received the sheriff's deed thereof. Two children were born to F. and M. (his wife) before, and one child after the sheriff's sale, all of whom, as well as F. and M., were alive when J. attained to his majority. J. afterward conveyed all his interest to the plaintiff.—*Held,* that the trusts as to M. and J. were valid, and J. took one-fifth of the property on becoming of full age, which passed by his conveyance to the plaintiff. The trusts as to the other three children being invalid, as illegally suspending the power of alienation, three-fifths of the property reverted to F. when J. attained his majority, and the sale and deed by the sheriff operated to convey that three-fifths to the plaintiff. But, as the first judgment had been found by the Special Term to have been paid before the sale, upon incompetent evidence, and the plaintiff's title, as to the three-fifths, had therefore been declared to be subject to the lien of the mortgage, a new trial was ordered.

Commissioners " for loaning certain moneys of the United States " have no power to sell a mortgage taken by them, and moneys paid to them in pursuance of an agreement to sell, cannot be applied either as upon a purchase or in payment of such mortgage.

The declarations of a sheriff, while holding an execution, cannot be given in evidence to prove payment thereof, as against the owner of the judgment upon which it was issued, or a purchaser at a sale under it. The fact that the sheriff has since died, does not alter the rule.

(Argued September 20th; decided December 27th, 1870.)

APPEAL from an order of the General Term in the second district, affirming a judgment rendered at Special Term.

The facts of the case are as follows :

On the the 4th day of March, 1834, the defendant, Abraham Fleet, being the owner in fee of certain lands in the

county of Queens, executed a deed of trust between himself
of the first part, and James H. Hackett, Sarah Van Lew
and Warren Cornwall of the other part, wherein, in considera-
tion of the love he bore his wife, Martha E. Fleet, and his
reputed son, John K. Fleet, then about four years old, and of
$100, he conveyed the lands in controversy on the following
trusts, as specified in the deed : " That is to say, to receive
all the rents, issues and profits of all the said property and
estate herein before mentioned and described, and the same
to apply in equal proportions toward the support and main-
tenance of Martha, the wife of the said party of the first
part, and the support and education of John K. Fleet, his
said reputed son, and of any children of the said party of the
first part that may hereafter be born of his said wife, with
power to invest whatever moneys may remain in the hands
of the said parties of the second part, over and above what
may be required for the said purposes in good and profitable
securities for the benefit of said wife and children ; and in
trust, further, upon the arrival of the said John K. Fleet at
the age of twenty-one years, to convey to him and the said
Martha (provided she shall be then sole and unmarried), their
respective proportions of the said estate, or all the right, title
and interest of the said party of the first part, of, in and to
the several lands and premises herein before mentioned
and described, such proportions to be determined by the num-
ber of children of the said party of the first part, and his said
wife, which shall be living at the time the said John K. Fleet
shall arrive at twenty-one years of age.   It is the express
intention of said party of the first part, that all the said
herein before described property shall go to and be divided
amongst the said Martha, John K., and all lawful children of
the said party of the first part, which shall be living at the
time the said John K. shall arrive at age, in equal proportions,
share and share alike.

   And further, that in the event of the decease of the said
Martha, John K., or either of the said children, the share to
which said party would have been entitled shall be equally

divided amongst the survivors.  And it is further provided, that if, upon the arrival of the said John K. at the age of twenty-one years, the said Martha shall not be living, sole and unmarried, her share or proportion shall continue to be held by the said parties of the second part, their survivors or survivor, in trust, for her and her benefit so long as her husband shall survive; and as such trustees, the said parties of the second part, shall account with her and pay over to her from time to time such moneys as she may require for her comfortable support and maintenance; and in case she shall not survive her said husband, her share or proportion of the said estate shall be vested in her heirs.  And further, that the shares of the said children as may be hereafter born as aforesaid, shall be held in trust for them by the said parties of the second part, until said children shall arrive at lawful maturity; and in trust, further, that if at any time before the said John K. shall arrive at age, it shall, in the judgment of the said parties of the second part, become necessary, they shall have the power to sell and convey the said estate hereby conveyed to them in trust, or any part thereof, and to execute the necessary deeds of conveyance therefor, and the proceeds of such sale to apply for the benefit of the several parties for whose benefit this trust is created, in manner as is above mentioned and provided."

This deed was acknowledged June 3d, and recorded June 4, 1834, in Queens county.

In July, 1835, the three trustees, by instruments under their hands and seals, formally renounced the trusts reposed in them by this deed.

On the 25th day of May, 1837, Thomas C. Pinckney recovered a judgment against Abraham Fleet in the Supreme Court for $200 besides costs, which was entered and docketed in Queens county on the same day.  On this judgment a writ of *fieri facias* was issued, returnable on the second Monday of July, 1837.

On the 14th day of June, 1837, Abraham Fleet and Martha E., his wife, executed a mortgage to Benjamin Albert-

son and Thomas Whiteson, loan commissioners of Queens county for $4,000, on the same lands mentioned in the trust deed, which was duly recorded on the same day.

On the 21st day of October, 1837, John H. Woodgate recovered a judgment against Abraham Fleet in the Supreme Court for $1,329.93, besides costs, by confession of bond and warrant of attorney, on which was due at the time of its entry $664.93, besides costs; which judgment was on the same day docketed in Queens county. On this judgment a writ of *fieri facias* was issued, returnable on the first Monday of May, 1838.

By virtue of the two writs, the sheriff of Queens county levied upon the lands, and on the 24th day of November, 1838, he exposed them for sale, at public auction, in due form of law, and sold all the right, title and interest which Abraham Fleet had therein on the 25th day of May and the 21st day of October, 1837, to Woodgate, he being the highest bidder therefor.

The sheriff thereupon executed and delivered to Woodgate his certificate of sale, and subsequently, on the 24th day of February, 1840, executed a deed conveying to him all the right, title and interest which Abraham Fleet had in these lands, on the 25th day of May and 21st day of October, 1837, or at any time thereafter, which deed was duly acknowledged and recorded on the same day. Woodgate claiming, by virtue of this deed, the title to the land and the right of possession, in April, 1840, commenced an action of ejectment against Abraham Fleet and Martha E., his wife.

Thereupon, and in June, 1841, Martha E. Fleet, John K. Fleet, and the other infant children of Abraham and Martha E., born subsequent to the execution of the trust deed, to wit: Melancthon, Lemuel and Anna E. Fleet, by their next friend, Anna being then " under the age of one year," filed a bill in the Court of Chancery, before the vice-chancellor of the first circuit, against Abraham Fleet, James H. Hackett, Sarah Van Lew, James Herriman, George D. Coles and John H. Woodgate, praying, among other things, that the trust deed

should be adjudged in force, and binding upon the parties thereto, and that new trustees be appointed, and that Woodgate be perpetually enjoined from prosecuting the action of ejectment.

To this bill Woodgate answered, setting up his title under the sheriff's deed. Herriman and Coles answered, claiming a lien by virtue of their mortgage as loan commissioners. The other defendants named in the bill suffered default. Thereupon such proceedings were had before the vice-chancellor, that, on the 23d day of March, 1843, it was, among other things, adjudged that the deed of trust was well executed and proved, and a good and valid deed of trust for the joint lives of Martha E. Fleet and John K. Fleet, and as to a moiety of the rents and profits of the real estate in the deed of trust conveyed, for the life of the survivor of them, and that the trusts thereof to that extent be carried into execution; the deed of trust to be void upon the death of either Martha E. or John K. for a moiety of the said rents and profits, and upon the death of both of them wholly, and that the injunction granted against John H. Woodgate, on the filing the bill, be made perpetual during the period of the joint lives of Martha E. and John K. Fleet, and during the life of the survivor of them, for a moiety as above expressed. That new trustees be appointed to perform the trusts in the deed to the extent above declared, in the place of the trustees named in the deed. That the mortgage to the commissioners of loans be established as a good and valid lien until paid off and discharged.

On the 7th day of October, 1846, Abraham Ayres paid to Jarvis Jackson and Peter Lyster, at that time loan commissioners, the sum of $3,650 toward the purchase of the $4,000 mortgage, under a written instrument, signed by the loan commissioners, whereby they assigned to him an interest in the mortgage to that extent, and agreed to assign to him the mortgage absolutely whenever he should pay them the balance due upon it.

On the 16th day of February, 1854, John K. Fleet having attained his majority, executed to Woodgate a deed con-

veying to him all his interest and title in the lands in question, which deed was acknowledged and recorded on the same day.

In May, 1854, Ayres commenced an action in the Supreme Court against Abraham Fleet, and Martha E. Fleet, his wife, the loan commissioners then in office, and those who made the agreement with him, Woodgate not being a party. In the complaint in that action, the plaintiff therein set up the facts as to the mortgage, and the payment of $3,650 to the loan commissioners, and prayed, among other things, that it be adjudged that the sum was not a payment upon the mortgage, and that the loan commissioners be at liberty to foreclose the mortgage for the full amount due thereon, and that they refund to him the sum so paid. It was finally adjudged in that action, that the whole principal sum was due upon the mortgage with some interest; that the loan commissioners had the right to foreclose it for the sum so due; that they should proceed to foreclose the same, and out of the money realized on such foreclosure they should, after deducting their costs and expenses, and the amount due the State, pay to Ayres the sum of $3,650.

Thereafter the loan commissioners advertised the lands for sale, under their mortgage, on the first Tuesday of February, 1855, claiming the entire sum of $4,000, besides interest to be due. On the 11th day of December, 1854, Woodgate tendered the loan commissioners the sum of $350 and interest, claiming that to be the balance due upon the mortgage, but they refused to accept the tender, claiming the whole amount to be due.

Whereupon Woodgate commenced this action, setting up in his complaint, among other things, the facts above stated, and praying relief in substance, as follows :

1st. That the priorities of the different equities may be ascertained.

2d. That it may be decreed how much money is due on the mortgage, and that the plaintiff, Woodgate, may be permitted to come in and pay the same.

3d. That if the mortgage be decreed a lien, Herriman and Rushmore may be decreed to satisfy it on payment of the same by plaintiff, Woodgate.

4th. That defendants be restrained from further proceedings to foreclose and sell.

5th. That Ayres be restrained from further proceedings in his action in relation to the amount claimed by him.

6th. That if the loan commissioners be allowed to proceed, it be decreed what estate they sell.

7th. That new trustees be appointed under the trust deed, and that such trustees be let into possession of the premises, to manage or lease the same, and to account to plaintiff, from time to time, for his share.

The defendants all answered, setting up in substance the following defences, viz. :

1st. That Woodgate's title, under the execution sale, was fully examined and adjudicated upon in the chancery suit before the vice-chancellor, and his decision fully settled and determined the rights under the trust deed; and that the loan commissioners' mortgage was held to be a valid lien on the premises in question, superior to his title under his execution sale ; and that the Pinckney execution had been paid.

2d. That the loan commissioners agreed to sell to Abraham Ayres the mortgage in question, who paid on account of principal, $3,650, and on account of interest, $350 ; and that under such agreement, and also an adjudication of the court thereon, in a suit commenced by Ayres against the loan commissioners, Ayres was entitled to $4,000 of the proceeds of the mortgage sale ; and that the loan commissioners had a right to sell the same, and out of the proceeds of the sale to pay Ayres, and to pay the balance due them.

3d. That as to the title from John K. Fleet, Woodgate acquired nothing, because John K. Fleet was defrauded into giving that deed ; and he had no right to alien his life interest.

4th. That the loan commissioners, in good faith, loaned the $4,000, and the moneys were applied in taking up two

prior mortgages amounting to $2,300, and the balance in repairing the property in question, long before the recovery of the Pinckney judgment, under which Woodgate claims title.

The cause was tried at Special Term, and it was adjudged in substance as follows:

That the trust deed conveyed to the trustees therein named the entire interest and estate of Abraham K. Fleet, the grantor, in the real estate therein described, until John K. Fleet, his reputed son, then an infant, should arrive at lawful age.

That John K. Fleet, upon his arrival at the age of twenty-one years, was entitled to the one-fifth part of the real estate in fee.

That one other fifth part thereof was to be held in trust for the benefit of the defendant, Martha E. Fleet, the wife of Abraham K. Fleet, during the life of her husband; and after his death, should she him survive, then it would go to her in fee, and that upon her decease before her husband, such one-fifth would belong and go to her children, or heirs-at-law.

That the provision in the trust deed, purporting to convey estates to the after born children of Abraham K. Fleet and his wife, being eventually three-fifths of the premises, is void, as it might, if valid, suspend the power of alienation beyond the legal period.

That Abraham K. Fleet, consequently, retained the reversion of the remaining three-fifths, and which, in the events that have happened, reverted to him or his assigns, upon the arrival of John K. Fleet at the age of twenty-one years, in August, 1853, subject, however, to the mortgage mentioned.

That the mortgage of Fleet and wife, to the commissioners of the county of Queens, for loaning certain moneys of the United States, was a lien to the extent herein after mentioned on the remaining three-fifths, of which Abraham K. Fleet held the reversion, and still is a lien thereon.

Which three-fifths may be sold by the defendants, Herriman and Rushmore, as such commissioners, to enforce the payment of the moneys thereby secured to be paid, unless such moneys shall be paid or tendered by the plaintiff, within thirty days after judgment.

That the judgment of Pinckney against Fleet, was paid before the sheriff's sale, and that the plaintiff would have otherwise been concluded from claiming under it, by the decree in the case of *Fleet and others* v. *Woodgate.*

That the plaintiff, Woodgate, as purchaser at the sheriff's sale, acquired the interest of Abraham K. Fleet in the remaining three-fifths, subject to the mortgage.

That the deed from John K. Fleet and wife to Woodgate conveyed to him one-fifth of the real estate, in fee, and the commissioners may be enjoined from selling the same.

That the full amount of the mortgage may be collected by the commissioners or their successors in office, as the payment by Ayres was upon an agreement to transfer and not to reduce the amount of the mortgage, and no such transfer could be legally made, and the right to collect the same has been formally recognized by a judgment of this court.

That the commissioners, upon a sale of the real estate, that is to say, of three-fifths of the mortgaged premises, as above authorized, must pay out of the moneys arising therefrom :

1st. The amount of the principal money remaining unpaid to them as such commissioners, viz.: $350, with interest now due and unpaid thereon, and until the same shall be paid, and also the costs and expenses of sale allowed by law.

2d. To Abraham Ayres $3,650, being the amount paid by him to the commissioners on account of the purchase of the mortgage, without interest, and the residue, if any (after deducting therefrom and paying thereout the value of the inchoate dower of the defendant, Martha E. Fleet, in such residue) to the plaintiff, Woodgate.

That the mortgage to the commissioners was and still continues to be a lien on three-fifths of the real estate for the whole amount secured to be paid thereby; and that subject

thereto, and to the inchoate right of dower of Martha E. Fleet, the plaintiff, Woodgate, acquired as purchaser at the sheriff's sale the reversionary estate of Abraham K. Fleet in and to the same.

That the defendants, James Herriman and Benjamin Rushmore, as such commissioners, and their successors, are authorized and directed to use all diligence to collect the whole amount of money secured, to be paid by the mortgage; and for that purpose to enforce the payment thereof by a sale of three undivided fifths of the real estate, pursuant to the statute in such case made and provided, and out of the moneys arising from the sale thereof, to pay as above provided.

That the defendants, Herriman and Rushmore, loan commissioners as aforesaid, and their successors in office, be enjoined and forbidden to interfere with, or sell, the remaining two-fifths part of the premises.

That Woodgate, as grantee of John K. Fleet, be let into immediate possession and enjoyment of the one undivided fifth part of the premises.

That upon a sale and conveyance of the three-fifths part, by the commissioners or their successors in office, pursuant to the statute, the same shall operate as a full bar, of any estate or claim in or to so much thereof, of or by any of the parties to this suit, or any claiming under them.

That the plaintiff, on payment of the amounts so decreed to be paid to the loan commissioners, and to the defendant, Ayres, within thirty days after notice of judgment, or in case of appeal within thirty days after affirmance thereof, be let into possession of the three-fifths part of the premises, as his own property in fee, but subject to the dower right of Martha E. Fleet; as to which, if asserted, he is to retain a right of subrogation under the mortgage, and Martha E. Fleet is to be allowed for any just offsets she may hereafter have for matters arising after the entry of this decree.

From this judgment Woodgate appealed to the General Term of the second district, and the judgment having been

affirmed, he appealed to the Court of Appeals. After this appeal he died, and the present appellants were substituted.

*Dennis McMahon*, for the appellants.

*William J. Cogswell*, for the respondents.

EARL, C.   The appellants claim that the decree in the chancery suit before the vice-chancellor is conclusive as to the true construction of the trust deed, and the force and effect which it is to have. With considerable doubt and hesitation I have come to the conclusion that this claim is not well founded. There is so much confusion in the papers and evidence that it is quite difficult to determine how far the decree in that suit should estop the parties in this.

The main object of that suit, so far as concerned Woodgate, was to stay him in the prosecution of his ejectment suit; and it was sufficient for the complainants to show rights and equities that entitled them to the injunction prayed for. When the court found that the trust deed was so far valid as to give them such rights and equities, it was unnecessary to go farther. When the complainants established that the deed was properly executed and was in force, notwithstanding the renunciation and reconveyance of the trustees, and that the deed contained trusts so far valid as to entitle the trustees or *cestuis que trust* to the possession of the lands, they had established all that was necessary to entitle them to a decree against Woodgate. If the court gave a wrong reason for its judgment, or placed it upon unnecessary grounds, the parties would not be estopped as to such reasons and grounds in any other suit. The bill did not pray for a construction of the deed, and that does not seem to have been a matter of controversy and discussion on the trial. All the grounds upon which Woodgate defended that suit are stated in his points submitted to the vice-chancellor, as follows:

"1st. The trust deed was made without any consideration passing between the parties.

" 2d. That it was made by the grantor with a fraudulent intent, he being indebted at the time, and to protect the property against creditors, and is therefore void.

" 3d. The trustees never accepted of the trust, which was made without their knowledge or consent in any way ; and as contracting parties it must be with their assent.

" 4th. The deed of the trustees is not to be met by the declarations of witnesses; it is a solemn instrument under seal.

" 5th. The trust deed not having been legally executed and delivered in due form of law, and being made by the defendants fraudulently, and without the privity or consent of the trustees, who refused to accept it when it came to their knowledge, did not vest the fee in them, but the same remained in the grantor, and was subject to be sold under execution, etc.

" 6th. The trustees had the power to reconvey by their deed, and did so, and the property was then in the original grantor, Abraham K. Fleet.

" 7th. The defendant, Woodgate, purchased the property at sheriff's sale, under an execution, etc., against Fleet, and received the sheriff's deed, by which he became vested with the whole right, title and interest of Fleet, and now claims to be entitled to the possession of the same."

The questions raised by these points were necessarily involved in the litigation, and as to all these questions the parties were undoubtedly estopped by the decree in that suit. But the general construction of the trust deed, except so far as I have already indicated, was not necessarily involved in that litigation, and the decision or opinion of the vice-chancellor thereon should not estop the parties in this suit.

A judgment is conclusive upon the parties thereto only in respect to the grounds covered by it, and the law and facts necessary to uphold it; and, although a decree, in express terms, purports to affirm a particular fact or rule of law, yet if such fact or rule of law was immaterial to the issue, and the controversy did not turn upon it, the decree will not con-

clude the parties in reference thereto. (*The People* v. *Johnson*, 38 N. Y., 63.)

The only claim made before us on the part of the appellants, either in the points or oral argument of their counsel, as to the construction of the trust deed, was that the decision of the vice-chancellor was conclusive. Upon the assumption that it was not conclusive, I do not understand that either party is dissatisfied with the construction given to the deed by the court below; and as there has been no discussion before us upon the question, I shall assume, without the careful examination I would otherwise give, that that construction is correct.

The only other question to be examined is the right of Woodgate under his sheriff's deed as against the mortgage of the loan commissioners.

The sheriff's deed purports to be based upon two judgments; one docketed May 25, 1837, in favor of Pinckney against Fleet, before the mortgage to the loan commissioners, and another in favor of Woodgate against Fleet, docketed October 21, 1837, after the said mortgage, and both after the trust deed. The court at Special Term found that, prior to the sheriff's sale, the Pinckney judgment and execution had been fully paid and satisfied, and hence that plaintiff's title as to three-fifths of the real estate was subject to the loan commissioners' mortgage. The payment of this judgment was a controverted question at the trial; and while there was some competent evidence tending to show the payment, it was by no means conclusive. As a portion of the evidence upon this subject, the court received and seemed to rely upon certain declarations of the deceased deputy sheriff who held the execution on that judgment, and who made the sale and gave the deed tending to show payment of the execution before the sale. This evidence was properly objected to on the part of the defendant, Woodgate, and I do not perceive upon what theory it was admissible. It was mere hearsay. The declarations were no part of any *res gesta ;* and hence, if the deputy sheriff could in any sense be regarded as the agent of the

owner of the judgment, they would not be competent evidence against him.   They are not competent to contradict the recitals in the deed, and I know of no rule that makes them competent because the declarant is dead.

It is no answer to this incompetent evidence to say that Woodgate was precluded by the decision of the vice-chancellor from denying that this judgment was paid and satisfied. There was no allegation in the complaint, or answer in the action tried before him as to the Pinckney judgment. Whether that judgment was paid or not was in no way litigated in that action, and in no way necessary to or involved in its decision.   Hence, upon principles above stated, the decree in that action furnishes no estoppel as to that judgment.

For the reception of this improper evidence the judgment must be reversed and a new trial granted, costs to abide the event.

LEONARD, C.   The most material question in this case is to ascertain the estate (if any), vested in Abraham K. Fleet after his execution of the trust deed to Hackett and others, and at the time of or subsequent to the purchase by John H. Woodgate at the sheriff's sale under the executions on the judgments against the said Abraham.

If the decree of March, 1843, before the vice-chancellor, must be regarded as *res adjudicata*, as to the *quantum* of estate acquired, the question is determined thereby.

The action in which that decree was entered, was brought by Mrs. Martha E. Fleet (the wife), and John K. Fleet and others, children of the said Abraham and Martha, and beneficiaries under the said trust deed, against John H. Woodgate and others, to have the validity of the said trust declared, for the appointment of new trustees, and for an injunction restraining Mr. Woodgate from prosecuting an action of ejectment for the land in question, which he claimed under his title acquired at the sheriff's sale.   The title so acquired was the interest of Abraham K. Fleet.

If any of the trusts contained in the deed to the trustees were valid, no right of possession was acquired by the sheriff's deed, and the trust deed constituted a bar to the action of ejectment. The complaint of Mrs. Fleet and her children against Mr. Woodgate and others is in evidence, but not the answer of Mr. Woodgate. We are, for the want of the answer, without the evidence required to determine the precise issues made by the pleadings in that action. The evidence shows that the controversy turned, in part at least, upon the delivery and acceptance of the trust deed. The validity of the trust provisions were also material to the inquiry, and might have been set up against the title of the trustees. The best evidence we have on the subject, is the points made by the counsel of Mr. Woodgate at the hearing, and these do not indicate that any question was urged as to the validity of the trust provisions. The assistant vice-chancellor did, however, discuss in his opinion, and by the decree which he pronounced, declare the extent or quantity of the estate of the beneficiaries, and the validity of some of the trust provisions, and the invalidity of others, and where the fee finally vested ; by which it appeared that no estate, present or future, was vested in Abraham K. Fleet, and the decree perpetually enjoined the prosecution of the action of ejectment.

Judge STRONG, before whom the present action was tried, has found, in effect, that the construction of the trust deed, as to the extent of the estates or interests of the respective beneficiaries, was not in issue before the vice-chancellor, and that in this respect he was limited to the determination of the question whether the provisions were valid so far as to maintain a valid title in the trustees. The judge omits to state the facts from which he draws his legal conclusion, but an examination of the evidence confirms its propriety. The points referred to, are the plainest indication afforded us by the evidence. The beneficiaries were not in a condition to litigate the extent of their respective estates, *inter sese*. It was sufficient for them, if there was any valid trust. It was

material for Mr. Woodgate to establish that the trust deed passed no estate, and he was at liberty to urge that the provisions of the trust were void in whole or in part, but there is no evidence that he did so. Judge STRONG holds that the decree of 1843 was final in this respect to the extent only of its "existing efficacy, which required that the beneficiaries had equities which should be protected by an injunction against the operation of the legal estate of Mr. Woodgate;" that the case was open for judgment as to the construction of the provisions of the trust and the extent or *quantum* of interest of the beneficiaries. The judgment appealed from declares that John K. Fleet took a vested estate at the age of twenty-one in one-fifth; that the trust continued as to one other fifth during the joint lives of Martha E. Fleet and her said husband; that as to the remaining three-fifths, the reversion remained in Abraham K. Fleet, and vested in possession when John K. Fleet attained his majority, and passed by the sheriff's deed to Mr. Woodgate, subject to the mortgage to the loan commissioners and to the right of dower of Mrs. Fleet. The invalidity of the trust as to three fifths of the estate, appears to have been so declared on the ground that the power of alienation was suspended during some portion of the lives of persons not in being at the creation of the trust estate.

In my opinion, we should adopt this construction. It carries into effect the intention of the grantor as to the two-fifths of the estate, wherein the trust is held valid. The interest of John K. Fleet, to some extent, according to the effect of this judgment, vested at the creation of the estate. The portion which he would finally take was then unknown, the intention of the grantor having, by the deed, been declared to be that the "property shall go to, and be divided amongst the said Martha (his wife), John K. (his son), and all lawful children of the party of the first part (the grantor) which shall be living at the time the said John K. shall arrive at age, in equal proportions, share and share alike."

When John K. became of age there were three other children living, born after the execution of the trust deed, and

the said Martha E. was also then living. Pursuing the intention of the grantor, as declared by his deed, John K. was then entitled to one-fifth of the estate in possession. The further provisions of the trust declared "that the shares of the children thereafter born shall be held in trust for them until the said children shall arrive at lawful maturity." When the vice-chancellor's decree was made in 1843, John K. was yet an infant, and the extent or *quantum* of the estate that would finally belong to him when he became of age was unknown, for the reason that the number of children who would then be living was uncertain. If no other children were living when John K. became of age, he would take a moiety, and the trust would continue for the benefit of Mrs. Fleet, as to the other moiety, if she should be also then living, and no part of the estate would revert to Abraham K. Fleet. The vice-chancellor correctly held that the trusts were void in favor of unborn children to continue till they respectively reached the age of twenty-one, but his views were erroneous in respect to the persons who were entitled to take by reason of the void provisions in favor of such children. The invalidity of the trust provision for unborn children did not increase the interest of John K. Fleet nor of Mrs. Fleet, but to that extent the land would revert to the grantor.

The decision of the vice-chancellor is conclusive, that the deed of Abraham K. Fleet conveyed the legal estate to the trustees. The Supreme Court were not, however, concluded from harmonizing the provisions of the judgment in this action with the intentions of the grantor, as to the quantity of the estate granted to his wife, or for her use, and to the son, who was living at the creation of the trust; and that result has been effected.

Three-fifths of the estate reverted to the grantor, when John K. Fleet attained his majority. Had not the rights of a judgment creditor intervened, the grantor could have so disposed of this reverted interest or proportion, as to have carried into effect his original designs, had he continued to be of the same mind. The sheriff's deed, therefore, takes

effect as to the three-fifths of the estate which reverted to Abraham K. Fleet.

There is no question, that the deed from John K. Fleet also conveyed his one-fifth interest to Mr. Woodgate.

Some other questions of minor importance, were urged by the appellant's counsel, which I will now consider :

1st. Mr. Ayres paid a sum of money to the loan commissioners, toward the purchase of the mortgage to them, and afterward, when one of the commissioners went out of office, his successor applied the amount as a payment on account, and the appellant now urges that this sum was properly so applied ; and that it was erroneous to hold that the whole amount of the mortgage remained unsatisfied.

The mortgage was never assigned, and the commissioners had no power to sell or assign it. It was a mistake to enter the money as a payment. That was not the purpose for which Mr. Ayres paid the money. He was in no way liable for the debt; and it was a mistake of the commissioners to receive it as upon an agreement of purchase, which they had no authority to enter into. Neither Abraham K. Fleet, nor Mr. Woodgate are entitled to any benefit from the money, nor was it paid on behalf of them, or either of them. The decree properly provides, on this state of facts, that the loan commissioners shall collect the whole sum due on the mortgage, and repay to Mr. Ayres the sum so received from him.

2d. It is further urged by the appellant, that the evidence of Mr. Cogswell, and of Mr. Warner, as to what the deputy sheriff stated, in respect to the payment of the Pinckney execution, was inadmissible, and has had some influence on the judge below, affecting his finding that the judgment on which the execution issued, was paid before the sheriff's sale to Mr. Woodgate.

This evidence was improperly admitted. The deputy sheriff was dead at the time of the trial, but that did not authorize his delarations to be given in evidence. The declarations of a former owner of land, since deceased, against his own interest, have been admitted as evidence against his

successors in estate, but that is not the relation here. I am not aware of any ground upon which this evidence can be legally sustained. It did not prove payment any more than the recitals of the sheriff's deed proved non-payment. It is probable that the learned judge would have reached the same conclusion from other evidence. It is said that Mr. Woodgate did not set up the Pinckney judgment as a foundation of the sheriff's sale, or of his title to the land in the suit before the vice-chancellor, when it would have cut off the mortgage to the loan commissioners. It would not be unfair to infer from the omission to set it up, when it would have affected his interest so favorably, that he could not, with truth, do so, or that the evidence then existed to prove its payment. Mr. Pinckney also gave some evidence tending to show that the judgment was paid. But the judge states that he has found the fact of payment, in part, on the evidence of Cogswell and Warner, and, I think, we cannot, for that reason, hold that their evidence was immaterial.

Upon the ground last mentioned alone, I think that we must order a new trial.

Judgment reversed and new trial ordered, costs to abide the event.

---

NOTE.—Notwithstanding the language of the Revised Statutes (1 R. S., 729, § 58), "where an express trust shall be created, for any purpose not enumerated in the preceding sections, no estate shall vest in the trustees," the courts have uniformly sustained the title of the trustees, in conveyances, upon trusts, valid in part only, to the extent of the trusts that are valid.

The case of *Darling* v. *Rogers* (22 Wend., 483) was a trust to sell *or mortgage* real estate for the benefit of creditors at large; and it was insisted that an express trust to mortgage not being authorized, no estate vested in the trustees. The Court of Errors held it valid for the purpose of selling, though void for the purpose of mortgaging. COWEN, J., says: "The debtor has given a deed with trusts, which are perfectly valid to a certain extent; he has completely exhausted the power conferred by law in raising a trust to sell; and the question is whether, because in one idle particular he happened to have gone beyond his strength and failed, everything that is well done must fail with it. I think all must agree that there is nothing in the nature of things which calls for such a result."

Note by the Reporter.

In *Van Vechten* v. *Van Vechten* (8 Paige, 104), Chancellor WALWORTH, speaking of the above case, says: "It being now settled that any legal trust is sufficient to sustain a conveyance to the trustee of an estate commensurate with such trust, without reference to the illegal trusts which the testator or grantor has attempted to create in the same estate, there will be no difficulty hereafter in vesting the legal title in the trustee for any purpose which is authorized by the Revised Statutes, without reference to the illegal trusts connected therewith." He held that the trust created by will as to certain real estate being void, as a suspension of the power of alienation for more than two lives, *that* real estate descended to the heirs-at-law upon the testator's death, and the rents and profits thereof from that time belonged to them absolutely.

The same principle of construction, as to the effect of valid and void trusts in the same instrument, is declared in *Parks* v. *Parks* (9 Paige, 107); *Irving* v. *DeKay* (9 Paige, 521); affirmed, 5 Den. 647; *Rogers* v. *Ludlow* (3 Sandf. Ch., 104); *Haxton* v. *Corse* (2 Barb. Ch. R., 506); *Dupre* v. *Thompson* (4 Barb., 279); *Tucker* v. *Tucker* (5 Barb., 99); *Rogers* v. *Tilley* (20 Barb., 639); *Savage* v. *Burnham* (17 N. Y., 561); *Post* v. *Hover* (33 N. Y., 593); *Harrison* v. *Harrison* (36 N. Y., 543.)

And such is the English rule, the failure of the void trusts resulting to the benefit of the heir-at-law. (See *Wright* v. *Horne*, 8 Mod., 222; *Cook* v. *Stationers' Co.*, 3 M. & K., 262; *Carrick* v. *Emigton*, 2 P. Wms., 361; 2 Jarm. Pow. Dev., 32.)

The most important feature of the principal case, however, is that the execution sale of November, 1838, is held to have vested in the purchaser the residue of estate left in Abraham K. Fleet, by reason of the inoperative trusts, although the extent thereof could not be ascertained until John K. Fleet attained his majority; and it was contingent upon the fact that children should be born after the trust deed was executed, and should, some of them at least, be living when John K. Fleet became twenty-one years of age.

In the case of *Scott* v. *Scholey* (8 East, 467), Lord ELLENBOROUGH decided that the residuary interest which might remain to the assignor of a term of years after satisfying the purposes of the assignment was not the subject of sale on *fi. fa.* And the same doctrine was applied in case of an assignment of personal property, in *Wilkes* v. *Ferris* (5 John., 335).

In *Brewster* v. *Striker* (2 Comst., 19), the Court of Appeals decide that where the legal estate is vested in trustees, nothing passes by a sale on execution of all the right and title of one who has the beneficial estate, although he is in possession, claiming title in fee under a judgment of partition.

In *Jackson* v. *Middleton* (52 Barb., 9), it was held that a contingent remainder could not be sold on execution; but in *Moore* v. *Littel.* (2 Hand, 66), which arose on the same grant, the Court of Appeals declare the estate vested; and the same court, in *Sheridan* v. *House* (4 Keyes, 569), still another case upon the same grant, decided that such a vested future estate *may* be sold on execution.

But the interest of Abraham K. Fleet was not a remainder, but a reversion, and a reversion is an estate vested *in presenti*, though to take effect in possession and profit *in futuro*, and may be aliened and charged as an estate in possession. (Cruise Dig. Tit., 17, § 13.)

Lord HOLT adjudged execution against a reversion, although a demise had been given for a term of 500 years. *Smith* v. *Angel* (1 Seld., 354); *Burton* v. *Smith* (13 Peters, 464), and *Munsell* v. *Roberts* (11 Ired., 424), are to the same effect, and the doctrine is fully recognized in *Payn* v. *Beal* (4 Den., 405).

Not only so, but as appears from the principal case, the estate passes to the purchaser, although at the time of sale it is impossible to determine what amount of estate is held in reversion; and indeed the whole reversion is contingent upon the happening of an uncertain event, to wit.: That some one at least of the three children, born after the trust deed was executed, should be living when John K. Fleet should attain to his majority.—REP.