In the Matter of the Accounting of George Macculloch Miller and Stephen Duncan Marshall, as Trustees under the Last Will and Testament of Levin R. Marshall, Deceased.

George Macculloch Miller and Stephen Duncan Marshall, as Trustees, etc., and George M. Marshall, Appellants; Dunbar Marshall, Respondent.

*Matter of Miller*, 18 App. Div. 211, affirmed.
(Argued January 10, 1898; decided March 8, 1898.)

Appeal from an order of the Appellate Division of the Supreme Court in the second judicial department, entered June 8, 1897, affirming a decree of the Surrogate's Court of Westchester county.

This proceeding was an accounting by the trustees under the will of Levin R. Marshall, deceased.

The testator, Levin R. Marshall, died on July 23, 1870, leaving a last will and testament which he had executed on the day of his death. He left a widow, Sarah E. Marshall, and six children, namely, George M. Marshall, Josephine E. Ogden, William St. John Elliott Marshall, Mary D. Marshall, John N. Marshall and Stephen Duncan Marshall. Another child, Levin R. Marshall, Jr., had died about two years before the testator, leaving a son named Dunbar Marshall, who was the objector in the present proceeding and is the respondent on this appeal. The testator's relations with his son Levin and his grandson Dunbar were friendly, and four months before he died the testator conveyed a plantation in Mississippi to a trustee, in trust for the mother of Dunbar during her lifetime, with remainder over to the son upon her death.

The value of this plantation was about $12,000, and the income therefrom was about $1,000. The principal of the estate of Levin R. Marshall which came into the hands of the trustees under the will was upwards of half a million dollars.

The material portions of the will are as follows:

" *First.* I direct that my just debts and funeral expenses be paid as soon after my decease as conveniently may be.

"*Second.* I give to Mrs. Rebecca Ogden, of the city of New York, the sum of five thousand dollars.

"*Third.* I give to Mary and Ada Peirce, daughters of my old friend, Levi Peirce, of New Orleans, the sum of twenty-five hundred dollars each.

"*Fourth.* To Lottie, a colored woman nurse to me during my last illness, I give the sum of five hundred dollars, to be paid to her out of my estate after the death of my wife.

"*Fifth.* To my wife, Sarah E. Marshall, I give and bequeath all my household furniture, horses and carriages, books, plate, pictures and jewelry, whether in this state or elsewhere, and it is my will that my said wife shall be allowed, during her pleasure, to use and occupy, without rent or other charge, my residence and plantation in Mississippi so long as the same belongs to my estate. And I further direct that my said residence and plantation in Mississippi shall not be sold, during the lifetime of my said wife, by my executors, except with her consent, signified by her executing the deed conveying the same.

" All the rest, residue and remainder of my said estate, of every nature and kind wheresoever situate, I give, devise and bequeath to my executors hereinafter named, or to such of them as shall qualify and assume the execution of this my will, their successor or successors, upon the following trusts, that is to say, upon the trust, out of the income of my said estate to pay, during the lifetime of my said wife, the sum of two thousand dollars ($2,000) per annum, by equal semi-annual payments (the first payment to be at the end of six months from my decease), to each of my six children, George M. Marshall, Josephine E. Ogden, William St. John Elliott Marshall, Mary D. Marshall, John N. Marshall and Stephen Duncan Marshall, or to the child or children of any of my said children who may die during my lifetime or the lifetime of my said wife, such child or children of such deceased child of mine taking the said two thousand dollars per annum in place of its or their parent, *per stirpes* and not *per capita.*

"And upon the further trust to pay all the balance and remainder of the income of my estate to my said wife annually during her life.

"And upon the further trust, after the death of my said wife, to reduce my estate into money or interest-bearing securities, and thereupon to divide and set apart the same into as many equal parts as I shall then have of my above children, or the lawful issue of any deceased child living (the issue of any deceased child, if more than one, to count as one in making such division), and to pay over the income of one of such equal parts to each of my said children, or to its or their lawful issue as aforesaid, during the lifetime of the youngest of my said children who shall be living at the time of my decease, or the decease of my said wife, if she survive me; and after the death of the said the youngest of my said children who may be living at the time of my decease, or the decease of my said wife, if she survive me; upon the further trust, to divide and distribute my said estate equally between my said children and the lawful issue of any deceased child who may have died leaving such issue, *per stirpes* and not *per capita;* but from the share set apart for my son George M. Marshall there shall be deducted and divided between his brothers and sisters, or their issue, as aforesaid, the sum of twenty-five thousand dollars, because of the large advances I have already made to him."

The widow of the testator died on February 5th, 1895. The objector, Dunbar Marshall, insisted that after her death he was entitled to share in the income of his grandfather's residuary estate, and this claim was sustained by the surrogate and affirmed by the Appellate Division of the second department. (See 18 App. Div. 211.)

*Wheeler H. Peckham* and *Rufus W. Peckham, Jr.*, for trustees, appellants.

*James F. Horan* for George M. Marshall, appellant.

*John L. Cadwalader* and *J. Mayhew Wainwright* for respondent, Dunbar Marshall.

Order affirmed, on opinion below, with costs to the parties who have filed briefs in this court, payable out of the estate.

GRAY, BARTLETT, HAIGHT and MARTIN, JJ., concur; PARKER, Ch. J. (with whom O'BRIEN and VANN, JJ., concur), reads for reversal.

Parker, Ch. J. (dissenting). The question is whether Dunbar Marshall is entitled, under the second trust provision of testator's will, to participate in the income after the death of testator's widow, and during the lifetime of testator's youngest child living at the time of her death? Whether the answer shall be in the affirmative or in the negative, depends upon the intent of the testator, the ascertainment of which is the object of all construction. Once found, the intent must govern, and to it all artificial rules must yield.

In making an examination of the will, for the purpose of ascertaining whether it was the object of the testator to make provision for his grandson Dunbar Marshall during the trust periods, or to exclude him from participation in the income of the estate, we note at the outset that every person, except Dunbar Marshall, who makes claim to participation in the estate of the testator, was named in the will. The testator had six living children for whom, or for whose children, he undertook to make provision, by way of income, during the first trust period. As they were all in one class, and were his only living children, it was not necessary to name them, and the care with which their names were given, in that particular connection, emphasizes the conceded fact that he was careful to exclude Dunbar Marshall from sharing in the income during that trust period.

In the first bequest to his wife he gave her name in full, although in subsequent provisions of the will, and notably in the first trust provision, the object of which was, in part, to provide that all the income of the estate should go to his wife, after the payment of $12,000 in annuities to the children, she was referred to as "my wife" without her name being given.

There were bequests to four persons not members of the family. The grandson, Dunbar Marshall's name, however, does not appear in the will, nor does the name of his father, who was a deceased son of the testator. Neither can there be found anywhere in the will any general reference to a class which indicates that the testator had him in mind as an object of his bounty. After a few specific bequests, and a devise to his wife of the use of his plantation in Mississippi during her

82

lifetime, comes the first trust provision, the object of which was to assure $2,000 per annum to each of his six living children out of the income of his estate, the remainder to be paid to his wife for her use. The provision to pay over directs that there be paid " the sum of $2,000 per annum to each of my six children, George M. Marshall, Josephine E. Ogden, William St. John Elliott Marshall, Mary D. Marshall, John N. Marshall and Stephen Duncan Marshall, or to the child or children of any of my said children who may die during my lifetime or the lifetime of my said wife. * * *"

It is not pretended that Dunbar Marshall takes under this provision. The purpose to exclude him is too strongly manifested to admit of any controversy whatever. The testator not only gives, with great care, the names of his children who are to receive $2,000 per annum each, but, by the substitutionary clause, he makes it clear that the child or children to be substituted for the deceased parent must be a child or children of one of the persons named (all of whom were then living) " who may die " — not *have died* — " during my lifetime." At the threshold of the trust provisions, then, we find Dunbar Marshall excluded from all participation in the income of the estate during the lifetime of testator's wife. That it was not an accident, but the result of a well-advised purpose to exclude him, is unmistakable. This deliberate exclusion of the grandchild from sharing in the income during the lifetime of the testator's widow is significant. It suggests that if the testator intended that Dunbar Marshall should participate in the income during the second trust period, such intent would likely be manifested as markedly as was the intent to exclude him in the first period. In the absence of language indicating a purpose on the part of the testator to distribute the income during the second period on a basis different from the first, it would be difficult to reach any other conclusion than that the testator intended that Dunbar Marshall should not share in the income of the trust estate either during the lifetime of his wife or the lifetime of the youngest child living at the time of her death.

The second trust period was to go into operation after the death of the widow, the trust object being to provide for a

further distribution of the income during the lifetime of the youngest of the six named children surviving the widow. It required the trustees "to divide and set apart the same (referring to principal) into as many equal parts as I shall then have of my above children or the lawful issue of any deceased child living, * * * and to pay over the income of such equal parts to each of my said children or to its or their issue as aforesaid during the lifetime," etc. The direction to divide the estate into as many parts as "I shall then have of my above children or lawful issue of any deceased child," does not suggest a desire on the part of the testator to have his grandson share in the income during that trust term. On the contrary, it is in harmony with what seems to be the general scheme of the testator to read the phrase "or lawful issue of any deceased child" in its usual or substitutional sense. It is an alternative and apparently used to make it clear that if one or more of the children named shall be dead when the time comes for dividing the estate into parts, then the issue of such deceased child shall come in, counting as one, and take the parent's share. It is true, undoubtedly, as respondent contends, that the word "or" can be read as "and," and it would clearly be the duty of the court to do it, providing it should first appear that by so doing the aim of the testator would be reached. But it is just as clearly the duty of the court not to substitute "and" for "or" when, as in this case, if read as written, the entire phrase harmonizes with what seems to be the general plan of the testator. But, if it could be open to doubt whether the phrase, "or the lawful issue of any deceased child," was used by the testator understandingly and intentionally, that doubt would seem to be put at rest by the remainder of the sentence, which directs the trustees "to pay over the income of one of such equal parts to each of my said children or to its or their issue." The direction to make payment to each of my said children of course refers to the named children, and whether "or" or "and" be used, the result is the same, because of the connection in which it is employed.

The phrase is substitutionary in every event. It could only go into effective operation upon the death of one of the tes-

tator's then living children, and then, under its authority, the issue of such deceased child would become substituted to the parent's share in the income. It is unmistakable, therefore, that the direction was to pay over income to six persons, or to the substitutes provided for by the will. If, then, we should substitute "and " for " or " in the phrase directing a division of the estate into equal parts, as the respondent contends we should, the testator would be found guilty of having intended the absurdity of dividing the estate into seven equal parts, but only paying over the income of six of the parts, leaving the income of the other part undisposed of. I am unable to find anything in the language of the will which indicates an intent on the part of the testator to have his grandson share in the income of his estate during either of the trust periods, and, therefore, it seems to be the duty of the court to read the clause, to which reference has been so frequently made, as it is written, the result being that all of the provisions of the will as to income are found to be in harmony. .

The learned surrogate seems to have been much impressed with the extrinsic fact that, shortly prior to the death of the testator, he conveyed in trust to one North a plantation in Mississippi of the value, at that time, so far as the evidence shows, of about $12,000, the trust being for the benefit of Dunbar Marshall's mother, with the reversion to him on his mother's death. This act suggested to his mind not only that the relations between the grandfather and grandson were pleasant, but also that the gift of the annuities to the testator's surviving children and their issue, during the lifetime of the widow, may well have been intended to compensate such children for the gift of the Mississippi plantation to Dunbar Marshall and his mother. It is difficult to see why this argument, assuming it to be well grounded, is not equally applicable to the second trust period. But such extrinsic facts as we have are not helpful in this case, for the language employed by the testator is unambiguous, and it has but to be read in its natural and ordinary sense to require the conclusion that the testator did not intend by his will to permit his grandson to participate in the income of his estate during the life of the trusts. We may feel that the grandson ought to have much more than the

Mississippi plantation, subject to his mother's life estate; that he ought to share in the income during both trust periods, but we have no right to make a will for the testator. We must read the one before us as we find it, and, thus reading it, the conclusion is reached that the will does not provide that Dunbar Marshall shall share in the income of the estate during the trust period, to be measured by the duration of the life of the youngest child surviving testator's wife.

The order should be reversed.