(38 Misc. Rep. 18.)

### HARRISON v. McADAM et al.

(Supreme Court, Special Term, New York County. May, 1902.)

· **1. WILLS—CONSTRUCTION—LAWFUL ISSUE.**

A will provided that the trustee of testator's property should pay one-third of the net income to his wife during her life, and two-thirds to his six children during their lives; on the death of the wife the children to receive all the income. The will further provided that the trustee after the death of his wife, and on the death of any child leaving "lawful issue" surviving, should apply the income of the deceased parent to the use of his child during minority, the principal to be paid to that child at majority. There was a further provision, which was held invalid as illegally suspending the power of alienation, that, if any of testator's children died without leaving lawful issue surviving, or if such issue died under the age of 21 years, the share of the income to which such child so dying without issue living to the age of 21 years was entitled should revert to the residuary estate for the benefit of the other heirs. A son of testator died in 1899, leaving no issue surviving, or heirs, except the daughter of his deceased son, in whom no estate had ever vested. *Held*, that such great-granddaughter was to be deemed of the "lawful issue" of her grandfather, and absolutely entitled to his share of the estate.

: **2. SAME—RES JUDICATA.**

Unborn descendants are not bound by the construction of a will by the court where they take by purchase directly from the testator, or

where the question is one unnecessary to be determined in the issues before the court.

3. EXECUTORS—COMPENSATION.

Compensation will not be awarded an executor for preparing his account beyond his commission, though he may be allowed the services of an accountant in preparing it.

Action by John C. Harrison against George W. McAdam and others for the construction of a will and for an accounting. Judgment rendered.

Robert F. Little and J. Du Pratt White, for plaintiff.

George W. McAdam, in pro. per.

John M. Scribner, for Thomas J. Harrison, Isabella Marsh, James R. Harrison, Isabella J. Mallory, and Margaret M. Harrison.

R. Forsythe Little, Jr., for Charles G. Harrison.

Brainard Tolles (Charles Francis Stone and Brainard Tolles, of counsel), guardian ad litem, for Jessica R. Harrison.

R. Forsythe Little, for Martha A. Lant, Charles G. Harrison, and Blanche I. Harrison.

Arthur Hurst, for Robert D. Neeson.

Lewis Hurst, for Ann J. McDowell and Albert Harrison.

STECKLER, J.  By the will of James Harrison the testator devised his property in trust to pay one-third of the net income to his widow during her life, and also to pay during the lifetime of his widow the remaining two-thirds of the net income, and upon the death of the widow all the net income, of his estate to his six children during their respective natural lives.  The fourth subdivision of the second clause of said will further provided:

"After the death of my said dear wife, and on the death of any of my said dear children leaving lawful issue surviving, I hereby authorize and direct my said executors, executrix, and trustees, and the survivors and survivor, to apply the share of their income of my said estate to which the parent of such child or children was entitled under this, my will, to the use of such child or children during their respective minority; and upon such child or children attaining full age then I give, devise, and bequeath to each of them, as capital and absolutely, their respective proportion of that part of my estate to the income of which their deceased parent was entitled under this my will.  But if any of my said children shall die without leaving lawful issue surviving, or if such issue shall all die under the age of 21 years, then it is my will, and I do hereby declare, that the share of my estate (to the income of which such child of mine so dying without issue living to the age of 21 years was entitled) shall revert to and become part of my residuary and other estate for the benefit of my other heirs.  The provisions herein made for my children to be in full bar of any claims by them against my estate."

The disposition made by the testator unduly suspended the power of alienation (Harrison v. Harrison, 36 N. Y. 543), but it was held that the void ulterior limitations over on failure of issue of testator's children, or upon said issue dying under 21, could be dropped, and the primary lawful disposition allowed to stand.  And the construction of the court was that there were separate shares given to the testator's children; that each share was held in trust for the life of the widow and the life of each beneficiary; that upon the death of any of the beneficiaries leaving issue the share or portion of the

one so dying would vest absolutely in such issue, subject only to the life estate of the widow; and upon such beneficiary dying without issue the same would vest absolutely in the survivors, subject in the same manner to the widow's life estate. One of the testator's children, William H. Harrison, died May 18, 1899, leaving no other issue him surviving except the defendant Jessica R. Harrison, his granddaughter, and sole heir of his body; and the main question involved in the action is whether this great-granddaughter of the testator is entitled to the one-sixth part of the estate from which her grandfather, a child of the testator, received the income during his life, and which her father, Clinton Harrison, would have been entitled to if, having arrived at the age of 21 years, he had survived his father, William H. Harrison.

The testator seems to use the word "issue" as synonymous with "child" or "children." The primary meaning of the word "issue" is descendants generally, or heirs of the body without regard to degree (Soper v. Brown, 136 N. Y. 244, 32 N. E. 768, 32 Am. St. Rep. 731; Drake v. Drake, 134 N. Y. 220, 32 N. E. 114, 17 L. R. A. 664; Trust Co. v. Viele, 161 N. Y. 11, 55 N. E. 311, 76 Am. St. Rep. 238), while the primary meaning of the word "children" is descendants of the first taker (Sanson v. Bushnell, 25 Misc. Rep. 268, 55 N. Y. Supp. 272; Feit's Ex'rs v. Vanatta, 21 N. J. Eq. 84); but the meaning of "issue" may be restricted (Palmer v. Horn, 84 N. Y. 516; Taylor v. Taylor, 63 Pa. 481, 3 Am. Rep. 565; Adams v. Law, 17 How. 417, 15 L. Ed. 149; Palmer v. Dunham, 125 N. Y. 68, 25 N. E. 1081), and the meaning of "children" expanded (Harley v. Mitford, 21 Beav. 280; Prowitt v. Rodman, 37 N. Y. 42; In re Paton, 111 N. Y. 480, 18 N. E. 625), by the context or by special circumstances. In England it seems to be a rule of construction that when the word "issue" is used in reference to the "parent" of that issue it means the parent's children; that is, the word "parent" confines the word "issue" to the children of the taker. Sibley v. Perry, 7 Ves. 522; Pruen v. Osborne, 11 Sim. 132. This rule was followed by Surrogate Rollins in Murray v. Bronson, 1 Dem. Sur. 217. There the testator gave property to trustees, to pay over to his children from time to time, and to the issue of such as were dead, "who are to take what the parent of such issue would be entitled to if living." By a codicil he directed that the share of each daughter should be held in trust until her death; and, if any of the daughters died without issue, her portion should go to the testator's surviving children "and to the issue of such as are dead, who are to take what the parent of such issue would be entitled to if living." It was held that the great-grandchildren of the testator—children of such of his grandchildren as died during the life of one of the beneficiaries of the trust—were not entitled to share in the corpus of the trust estate. The Murray Case was qualified, however, in Trust Co. v. Tobias (Sup.) 4 N. Y. Supp. 211. In this last-cited case it appeared that the testatrix ordered her executors to divide her estate into eight portions, and to pay the income of each portion to each one of her children, and on the death of each child to pay over the principal to the child or children of such child living at the time, and to the issue of such as were deceased, "but

so, nevertheless, that the issue of any deceased child or children * * * shall take equally among them the share or shares only which the parent or respective parents of such issue, if living, would have taken, * * * such issue representing the parent"; and, further, that, in case any child died without issue, the share of that child should be divided among the surviving children and their issue on exactly the same terms as stated. One of the children dying without issue, it was held that grandchildren and great-grandchildren of deceased children of the testatrix were entitled to take under the will. The decision was based mainly on the authority of Ross v. Ross, 20 Beav. 645, in which case the rule enunciated in Sibley v. Perry, 7 Ves. 522, was modified.

In the Ross Case the master of the rolls said:

"The first rule is this: That the word 'issue' includes all remote descendants of the person whose issue is spoken of, and the burden of proof lies upon him who contends that it is to be restricted to a narrower signification. The next rule is this: That when the word 'issue' is used in reference to the 'parent' of that issue, it must mean his 'children'; that is, the word 'parent' confines the word 'issue' to the children of the taker."

And in modification of the latter rule he said:

"It is clear that the 'issue' of the 'parent' must mean the 'children' of the parent, but it is not certain in every case (and it must be so before that rule can apply) that the testator has by the word 'parent' meant to signify the first taker, the child in the first instance."

On confirmation of the referee's report in Trust Co. v. Tobias, supra, Justice Patterson said:

"It seems to be conceded that the whole case turns on Sibley v. Perry, 7 Ves. 522, being a controlling authority. There is nothing decided in the courts of this state which should make it so, nor do I perceive anything which entitles it to be regarded as such in this country, whatever may be the views of the English judges as to its having established a general rule of construction binding upon them."

The language of the first part of the fourth subdivision of the second clause of the will of James Harrison is certainly susceptible of the construction that his great-grandchildren should not take unless the estate became vested in the grandchildren. The testator, however, says in the latter part of that subdivision:

"But if any of my said children shall die without leaving lawful issue surviving, or if such issue shall all die under the age of twenty-one years, then it is my will, and I do hereby declare, that the share of my estate (to the income of which such child of mine so dying without issue living to the age of twenty-one years was entitled) shall revert to and become part of my residuary and other estate for the benefit of my other heirs."

In the phrase "die without leaving lawful issue surviving," where the time referred to is the death of the first taker, the word "issue" is never limited to any particular class of descendants. Westwood v. Southey, 2 Sim. (N. S.) 192; 2 Underh. Wills, § 675, p. 923; Theob. Wills (5th Ed.) p. 623. Moreover, if Jessica Harrison is not entitled to the fund from which her grandfather received the income during his life, it is questionable whether she is one of the testator's "other heirs," with the right of representation through her grandfather. Angus v. Noble, 73 Conn. 56, 46 Atl. 278. The use of the

words "other heirs" indicates an intention that the substituted devise should not take effect unless the line of William H. Harrison became entirely extinct; otherwise Jessica would be disinherited for the benefit of testator's other heirs, including other great-grandchildren who had lost both parent and grandparent, though not in the same order. It is inconceivable that the testator intended to divide his great-grandchildren into two classes,—those whose parents predeceased their grandparents and those whose grandparents predeceased their parents, —and to confer all his bounty on the latter class. It is possible, however, under the construction contended for by the opponents of the great-grandchild, that Jessica might inherit, as the representative of her grandfather, William H. Harrison, a share in that portion of the estate set aside for the use of any child of the testator (other than William H. Harrison) in case all the children of such child should predecease such child; so that Jessica has a possibility of inheritance as to other portions of the estate except that enjoyed by her own grandfather. Such a result would be absurd. Wills should be construed in such a manner as to avoid injustice and inequality in the treatment of those between whom the testator has no occasion to discriminate, particularly the unborn (In re Miller, 18 App. Div. 211, 45 N. Y. Supp. 956, affirmed in 155 N. Y. 646, 49 N. E. 757; In re Truslow, 140 N. Y. 605, 35 N. E. 955; In re Crawford, 113 N. Y. 366, 21 N. E. 142; Stokes v. Weston, 142 N. Y. 433, 37 N. E. 515), and a construction should be adopted so as to avoid a disinheritance of any of the direct descendants of the testator (In re Brown, 93 N. Y. 295; In re Paton, 111 N. Y. 480, 18 N. E. 625). Upon the whole case, therefore, I think, although another view of the will may be warranted, that Jessica R. Harrison is entitled to the capital of the fund invested for the benefit of her grandfather during his life.

The contention that the judgments in the accounting of Harrison v. Harrison and the partition suit of Marsh v. Masterson cut off the claim made by Jessica R. Harrison in this action cannot be sustained. An adjudication in regard to the construction of a will does not bind the unborn taking by purchase directly from the testator (Smith v. Secor, 157 N. Y. 402, 52 N. E. 179; Kilpatrick v. Barron, 125 N. Y. 751, 26 N. E. 925; Monarque v. Monarque, 80 N. Y. 320); nor does an adjudication upon a question not necessary to the determination of the issues existing between the parties before the court have the effect of res adjudicata (Woodgate v. Fleet, 44 N. Y. 1).

Another question is presented by the claim of the executor of William H. Harrison, the deceased trustee,—that the executor is entitled to the sum of $1,500 for his services in the preparation of the account filed herein. This claim cannot be allowed. In the preparation of the account the executor merely performed a duty which devolved upon the estate of his testator, for the performance of which duty the statutory commissions must be deemed adequate compensation. Collier v. Munn, 41 N. Y. 143; In re Valentine's Estate, 9 Abb. N. C. 313; In re Allen, 96 N. Y. 327. As to the amount actually paid by the executor for the services of the accountant,—$400,—it seems to me that under the peculiar circumstances of this case such services were necessary in the preparation of the account, and that sum will

therefore be allowed the executor. In re Smith's Estate (Sur.) 12 N. Y. Supp. 88; In re Harbeck, 81 Hun, 26, 30 N. Y. Supp. 521.

Settle interlocutory judgment on notice. Judgment accordingly.