NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—August, 1882.

## WALTON v. HOWARD.

*In the matter of the estate of* HARRIET WITHERS, *deceased.*

On a proceeding to determine whether the bond of an administratrix afforded adequate security to the creditors, etc., of the estate, an order directing that the moving party "be allowed for his costs and expenses the sum of two hundred and seventy-five dollars, *to be paid to his counsel;* that the administratrix be allowed for her costs and expenses the sum of one hundred and fifty dollars, *to be paid to her counsel;* and that she take these moneys out of the funds of the estate and deposit them with the clerk for disbursement, in accordance with these provisions, was—*Held*, objectionable, and set aside on the grounds that,

1. Under Code Civ. Pro., there is no provision whereby the Surrogate can lawfully award compensation out of a decedent's estate directly to the counsel of parties litigant; the defect in the order not being cured by the circumstance that it, in form, granted costs to the parties and not to their attorneys.

2. It required the administratrix to compensate her own attorney.

Code Civ. Pro., §§ 2561, 2562, which, except in certain rare cases, govern the grant of costs and allowances in a Surrogate's court, substantially declare that (1) however eminent may be the counsel who renders legal services in a proceeding, for any other party than an executor, an administrator, a guardian or a testamentary trustee, the maximum amount which can be taxed for those services, in favor of his client or for his own benefit, is the sum of seventy dollars, together with ten times as many dollars as there have been days, less two, necessarily occupied in the trial or hearing; and (2) precisely the same limitations apply also to executors, administrators, guardians and testamentary trustees, except that, upon the final accounting of such officers, they may be awarded, in addition, not more than ten dollars for each day employed in the trial and *necessarily occupied* in preparing therefor, and in arranging and setting out the account.

Whether it is the counsel's or the client's time whose *necessary occupation* is to be considered in this connection, *quære?*

*It seems*, that *parts of days* are not synonymous with *days* so necessarily occupied, for the purposes of the statute.

Whether, upon the judicial settlement of an account, payment to counsel can ever be sanctioned as a charge against the estate, when it recompenses services which have already been the subject of taxation by the Surro-

gate, and for which the accounting party has been granted the statutory allowance, *quære*.

APPLICATION by Ruth H. Walton, administratrix of decedent's estate, to set aside an order granting certain costs out of the estate to Bradford Howard, petitioner in a proceeding to compel her to file a new bond, etc., and to her counsel therein.   The facts appear sufficiently in the opinion.

FRANCIS LAWTON, JR., *for administratrix.*

H. D. BIRDSALL, *for Bradford Howard.*

THE SURROGATE.—By order of this court, the question was submitted to a referee, whether the bond of the administratrix of this decedent's estate afforded adequate security to creditors and parties in interest.   Upon the coming in of the referee's report, an order was entered, which the administratrix now seeks to set aside, in so far as it grants certain costs and allowances out of the estate.   The order in question directs that the moving party in the proceeding "be allowed for his costs and expenses the sum of two hundred and seventy-five dollars, *to be paid to his counsel* . . . and that the administratrix be allowed for her costs and expenses the sum of one hundred and fifty dollars, *to be paid to her counsel.*"   It further provides that she shall take these moneys out of the funds of the estate and deposit them with the clerk of this court for disbursement, in accordance with the foregoing provisions.

This order was improvidently entered.   Its directions that costs be paid to the respective counsel out of the moneys of the estate, and that the administratrix deposit with the clerk an amount sufficient for that purpose are

clearly in excess of the jurisdiction of this court. The Surrogate of New York was authorized by the act of 1870 (chap. 359, sec. 9) to make allowances in lieu of costs, directly to counsel. That act has been repealed, and in the Code of Civil Procedure, which has supplanted it, there is no provision whereby the Surrogate of this or any other county can lawfully award compensation out of a decedent's estate directly to the counsel of parties litigant. In this respect, the law which was in force throughout the State for many years prior to 1870 has been practically restored. What that law was is disclosed not only by examination of the statutes, but by numerous judicial decisions (see Western v. Romaine, *1 Bradf., 37;* Wilcox v. Smith, *26 Barb., 329;* Lee v. Lee, *39 Barb., 172;* Devin v. Patchin, *26 N. Y., 448;* Reed v. Reed, *52 N. Y., 651*).

The statute in force previously to 1870 was as follows: "In all cases of contest before a Surrogate's court, such court may award costs *to the party* in the judgment of the court entitled thereto, to be paid either by the other party personally, or out of the estate which shall be the subject of such controversy" (2 Rev. Stat., 223, sec. 10; *3 Banks, 6th ed., 330*).

It is demonstrated, by the decisions just cited, that, before the adoption of the Revised Statutes, Surrogates had no authority to award any costs or allowances whatever, either to parties or counsel; and that, so far as counsel are concerned, there has never been authority to compensate them directly, except during the period in which the act of 1870 was upon the statute book. This view is clearly recognized by the Court of Appeals, in Noyes v. Children's Aid Society (*70 N. Y., 483*).

It is claimed by the former counsel for the administratrix, and by the opposing counsel, at whose joint instance was entered the order under discussion, that it is not unlawful, within the decisions above cited, because in form it grants costs to the parties and not to their attorneys. However this may be, the order is in substance a violation of law, and should not be upheld. It requires the administratrix, and the clerk of the court, to take steps which will absolutely insure such payments to counsel as the court would have no authority to award directly.

The order is objectionable for another reason, so far as it requires the administratrix to compensate her own attorney. It is doubtful whether such a direction could lawfully have been made, even while the act of 1870 was in force (Marsh v. Avery, *81 N. Y., 30*). It is clear that there has been no warrant for such procedure since that act was repealed, and since the authority of the Surrogate of this county has been subjected to the same limitations by which similar officers in other parts of the State have always been restrained (Seaman v. Whitehead, *78 N. Y., 306*).

The motion to set aside the objectionable order is therefore granted.

As to the contents of the order which must be entered in its stead, it is proper to state that, apart from the erroneous features which have been already considered, the amounts which the existing order awards as costs are in excess of what is authorizable by law.

In place of the broad discretion which the Surrogate was privileged to exercise while the statute of 1870 was in force, he is now restrained within the very narrow limits of the Code of Civil Procedure. Except in certain cases,

which need not be here discussed, and which seldom present themselves for consideration, the sums which can lawfully be granted for costs and allowances must be ascertained by reference to sections 2561 and 2562.

Section 2561 provides that "the Surrogate, upon rendering a decree may, in his discretion, fix such a sum to be allowed as costs, in addition to the disbursements, as he deems reasonable, not exceeding, where there has not been a contest, twenty-five dollars, or, where there has been a contest, seventy dollars; and, in addition thereto, where a trial or hearing upon the merits . . . . *necessarily occupies* more than two days, ten dollars for each additional day."

The succeeding section (sec. 2562) permits an additional award "for counsel fees and other expenses" to executors, administrators, guardians and testamentary trustees, upon the judicial settlement of their accounts. The amount of this allowance must be determined by a *per diem* calculation, and, like the other, cannot exceed the maximum sum of ten dollars for each day employed in the trial and *necessarily occupied* in preparing therefor, and in making ready the account for settlement.

These provisions, however simple and unequivocal they may seem to a casual reader, are not always easy of application, and their meaning is by no means free from doubt. They have certain features, however, which are distinct and unmistakeable:

1st. They declare that, however eminent may be the counsel who renders legal services, in a proceeding in this court, for any other party than an executor, an administrator, a guardian or a testamentary trustee, the maximum amount which can be taxed for those services, in

favor of his client or for his own benefit, is the sum of seventy dollars, together with ten times as many dollars as there have been days, less two, necessarily occupied in the trial or hearing.   2d.  And they further declare that precisely the same limitations apply also to executors, administrators, guardians and testamentary trustees, except that, upon the final accounting of such officers, they may be awarded in addition, not more than ten dollars for each day employed in the trial and *necessarily occupied* in preparing therefor, and in arranging and setting out the account.

It need scarcely be said that the statute, which has thus regulated the authority of the Surrogate to award costs, does not preclude executors, administrators, trustees or guardians from employing counsel to give them necessary legal assistance in the management of their trusts, or from rewarding the services of such counsel according to their value, and without reference to the limitations of the Code of Civil Procedure.   For payment so made, such an officer may, of course, present to the Surrogate his claim for reimbursement out of the funds of the estate.   Such claim may justly form, as it often does form, one of the items with which he credits himself in his accounts, and, so presented, it is laid bare to the scrutiny of all persons interested in the estate, may be objected to, like other items, by any party who chooses to contest it, and will be allowed or disallowed, according as it is ascertained to have been a proper or an improper disbursement (Gilman v. Gilman, *6 T. & C., 214*, affirmed, *63 N. Y., 41*).

Whether, upon a final accounting, such payment to counsel can ever be sanctioned as a charge against the estate when it recompenses services which have already

been the subject of taxation by the Surrogate, and for which the accounting party has been granted the statutory allowance, need not be here determined.

All that is now necessary to maintain is the proposition that, however distinguished may be the counsel and however valuable his services, the Surrogate has no power to award, under any circumstances, a larger compensation than ten dollars per day, in addition to seventy dollars.

This is, no doubt, in many instances, a very meagre and insufficient reward—far less than the court would feel bound to allow in the exercise of a wider discretion; but it is the maximum reward which the law has established, and that law, both in its letter and its spirit, must be obeyed and respected.

My observation of the circumstances attending the present case has led me to scrutinize other cases, in which applications are pending for costs and allowances.

There is a rule of this court, established by my predecessor, which prescribes the procedure for the adjustment of such costs and allowances, and requires certain affidavits to be filed for the information of the Surrogate. It seems to be not infrequently the case that these affidavits, purporting to contain averments as to the amount of time employed by counsel, disclose the number of *days and parts of days* spent at the trial or hearing, or in preparing for the same, or in making up the account, as the case may be. It is manifest that such evidence does not afford a proper foundation for the action of the court. One may be engaged for *"parts"* of all the days in a year, and yet consume no more time than is customarily devoted to the labors of a single week.

The estates of decedents are now so well protected

against excessive demands of counsel by the restrictions of the Code that there is little cause for a severe or illiberal construction by the Surrogate of those provisions by which his action must be guided. But there is still less cause for his shutting his eyes to the purposes of the statute and the mischiefs which it was designed to obviate and correct.

I shall not feel justified, now that my attention has been called to this practice, in regarding such affidavits as furnishing competent evidence of the number of days "necessarily occupied."

The Court of Appeals, in the case of Higbie v. Westlake (*14 N. Y., 281*), put a construction upon a statute not unlike that now under consideration; a construction which I feel bound to follow in performance of the always delicate and often disagreeable duty which is imposed upon me by law.

The statute of 1844 allowed to an executor or administrator, who should superintend the sale of his decedent's real estate for the payment of debts, "a compensation not exceeding two dollars a day for the time *necessarily occupied* in such a sale."

The Court of Appeals held that an administrator, who claimed that he had been engaged for 140 days, in executing an order of the Surrogate to sell certain property of his intestate, could only be granted an allowance for such days as were actually and necessarily occupied in the matter. Says Denio, J., pronouncing the opinion of the court, "The administrator swears to 140 days, and to justify the charge he says he could not establish himself in any other business while this matter was going on. No facts are shown to prove that such an exclusive devo-

tion of the administrator's time to this business was necessary.  The statute contemplates only an allowance for time necessarily and actually occupied about the sale. It does not warrant the idea, which seems to have been entertained by this administrator, that he was upon a salary from the commencement to the conclusion of the business.  We think the allowance of $60 made by the Supreme Court was quite liberal" (Higbie v. Westlake, *supra*).

It seems to me that the words "necessarily occupied" must be held to have precisely the same force and effect in sections 2561 and 2562 of the Code, which they were decided to have in the statute of 1844, as interpreted by the Court of Appeals.  An attorney, no more than an administrator, can fairly be said to have been "necessarily occupied" one hundred and forty days in the business of an estate, unless his devotion to such business during that time was substantially to the exclusion of other employment, and was essential for the proper discharge of his duties.   He has certainly not been employed that number of days, within the meaning of the Code, although on each of such days he may have rendered some slight service, if his time has mainly been occupied in other pursuits.

It is difficult, and perhaps impossible, to formulate an exact rule applicable to this subject.   For reasons which readily present themselves, it would be, for example, harsh and unjust to require that any arbitrarily selected number of hours should constitute a day's employment, and that the *per diem* allowance should be rigidly computed by ascertaining the number of hours employed, and reducing those hours to days by the stern process of arithmetic.

It would be equally harsh and unjust, when counsel had set apart a day for devoting himself to some matter pending in this court, and had put aside other business in consequence, to disallow the *per diem* compensation if otherwise properly taxable, because, without fault of his own, he chanced to be prevented from executing his purpose.

This last suggestion is upon the hypothesis that it is the counsel's time, and not the client's, whose "necessary occupation" is to be considered, though whether it is the one or the other is one of the many vexed questions with which the statute abounds.

But while, in these respects, and in others of a similar nature, the court should deal liberally with its attorneys in passing upon their claims for costs and allowances, it is equally clear that attorneys should deal fairly and justly with the court in presenting such claims. If by devoting himself with reasonable diligence for a single week to the preparation of an executor's account, counsel could render all the service which the occasion demanded, he surely should not be allowed for a year's employment, because through indifference or from press of other business, or (if such a case can be conceived of) for the very purpose of increasing his compensation, he has prolonged his labors through that period of time, and has actually devoted thereto some odds and ends of time during every day. As has been intimated already, it is perhaps impracticable to establish any more definite standard by which to measure the claims of litigants than is afforded by the statute itself. For the present, certainly, I shall not attempt to modify the rule established by my predecessor. And it seems to me

that if, in any given case, good sense is used in apply-ing the statute, and good faith in presenting the claim, there need be no serious embarrassment.

If, for example, a year has elapsed from the time when one's labors as counsel began until they are completed, the question which he might well ask him-self, before presenting his claim for costs, is this:

How many of the days, while this matter has been in my hands, have been substantially devoted to its consideration? What portion of the whole intervening period can I fairly claim has been necessarily em-ployed?

Such is, doubtless, the spirit of the statute and of the rule of this court, which was framed to effectuate its purposes. And while counsel may often be justified in the belief that his services are not fully compensated when their value is tried by these tests, he is warned, be-fore he enters upon his employment, of these strict lim-itations which the statute imposes.

I have taken this occasion to announce, with some par-ticularity, my interpretation of sections 2561 and 2562, be-cause of the fact that I am confronted daily with ques-tions similar to those which are involved in one phase of the present proceeding.

The views which I have expressed will furnish a guide to counsel in presenting their applications under those sections, as well as to the clerk, who, for the convenience of parties, is often called upon to adjust costs and allow-ances, subject to the surrogate's approval.

After examining all the papers which have been sub-mitted on this motion, I think that the costs of each of the parties may properly be taxed at $100, and be made

payable out of the funds of the estate.   The administratrix, however, has already paid that sum to her attorney during the pendency of the proceedings wherein this order was made.   That payment will be credited to her upon her final accounting, and no additional sum is here allowed.

An order may be entered conforming with this decision, and directing the clerk to pay over to the administratrix the moneys now in his hands belonging to the estate.