NEW YORK COUNTY.—HON. D. G. ROLLINS, SURROGATE.—August, 1882.

CHATFIELD V. HEWLETT.

*In the matter of the probate of the will of* SAMUEL WOOD, *deceased.*

*It seems,* that, previously to the passage of the act, L. 1870, ch. 359, relating to the Surrogate's court of the county of New York, the latter could not lawfully order a substitution of attorneys, in proceedings pending therein.

Since September 1st, 1877, a Surrogate has had authority to direct substitution of attorneys in proceedings before him, upon such terms, as to compensation for the professional services of the retiring attorney, as seem reasonable and just (Code Civ. Pro., § 17; General Rule 10), in like manner as other courts of record.

The testimony of attorneys, who give their opinion as to the value of legal services rendered in a given case, need not be accepted as controlling.

Head v. Hargrave, 4 *Morrison's Transc.*, 440—followed.

In proceedings instituted for the probate of a will, proponent's attorney consented to retire, upon due provision being made for payment for his services. By consent of parties, an order was entered substituting an attorney, and directing a reference to take proof as to the value of such services; which latter being reported as worth $10,000, it was contended that the report constituted an *award* which the Surrogate had no jurisdiction to disturb or set aside.—

*Held*, that here was no submission to arbitration; that the order of reference was one lawfully made, to inform the conscience of the court, which was at liberty to accept, in whole or in part, or altogether reject the conclusions and recommendations of the report.

CONTEST over the substitution of an attorney in place of Levi S. Chatfield, attorney for Abraham Hewlett, proponent, in proceedings for the probate of decedent's will. The facts appear sufficiently in the opinion.

H. S. CHATFIELD, *for Levi S. Chatfield.*

JOHN J. ARMSTRONG, *for A. Hewlett.*

THE SURROGATE.—On May 23rd, 1879, an application was made by the proponent of decedent's last will and testament for the substitution of another attorney, in the place of Mr. Chatfield who had theretofore been acting as his counsel. Mr. Chatfield consented that, upon the making of due provision for the payment of his services, the desired change might be effected. By consent of the parties, an order was thereupon entered substituting Mr. Armstrong as proponent's attorney, and directing a reference to Mr. Marsh *to take proof* as to the value of the services of Mr. Chatfield, in the matter of proving before the Surrogate the will and codicil of the decedent. The referee was also directed to submit the testimony taken before him, together with his opinion thereon.

Mr. Marsh declined to serve, and, by written stipu-

lation of the parties, Mr. Shepard was substituted in his stead. The inquiry was conducted before that gentleman, and resulted in his finding that the services of Mr. Chatfield were of the value of $10,000. This report was set aside by the late Surrogate, and thereafter the matter was referred to Mr. Ruggles, who was directed to take proof as to the value of the services and as to any payments made on account thereof, and to report such proof, with his opinion thereon, to the court.

The order of reference gave to the parties the liberty of putting in evidence, subject to such legal objections as might be taken thereto, such parts of the testimony taken and returned by Mr. Shepard as they chose to introduce, and of supplementing it by other evidence if they desired.

The parties thereupon proceeded with the reference. During its progress, Mr. Chatfield filed with the referee a paper whereby he claimed that the Surrogate had no authority to order the reference then pending, for the reason that the report of Mr. Shepard, fixing the sum of $10,000 as the value of his services, constituted an award which the Surrogate could not legally disturb, and that, while he was willing to proceed before Mr. Ruggles as an arbitrator, he did not intend thereby to waive this jurisdictional objection to the order of reference. Mr. Ruggles has reported that, in his opinion, the services rendered by Mr. Chatfield in proving the will and codicil were reasonably worth $2,500, but that nothing is now due to him on account of such services, as they have been more than paid for already.

It seems proper to consider, at the outset, whether there is any foundation for the claim that the proceed-

ings before Mr. Ruggles were invalid, for lack of jurisdiction in the Surrogate to make the order appointing that gentleman referee.

And, to this end, it is important to inquire whether the original order appointing Mr. Marsh was within the limits of this court's jurisdiction. That order was entered in May, 1879, and, as has been already stated, was the result of an application to this court to direct the substitution of Mr. Armstrong in the place of Mr. Chatfield, as attorney for the proponent.

Prior to the passage of chapter 359 of the laws of 1870, it is. doubtful whether the Surrogate could lawfully have made such an order as is here under consideration (Coates v. Cheever, *1 Cow., 463, 475;* Cullen v. Miller, *9 N. Y. Leg. Obs., 62, 66;* Petition of Hunt, *1 Tuck., 55;* Matter of Sommerville, *id., 76*).

By the passage of that act, however, and of the Code of Civil Procedure, the jurisdiction of the court has been so enlarged as to leave no doubt that it possessed, when this order was entered, the same power enjoyed by other courts of record, regarding the substitution of attorneys.

Section 2 of the act of 1870, *supra*, provided that, in proceedings before the Surrogate's court of this county, all persons or parties having a right to appear therein might appear by an attorney or counsellor of the Supreme court, and that, in case of such appearance, service of papers, other than those required to be personally served, might be made upon such attorney. This statute continued in force until September 1st, 1880, when it was supplanted by the Code of Civil Procedure (see § *2528*).

Section 17 of the Code, which went into operation on September 1st, 1877, authorized the General Term Justices of the Supreme court, and the Chief Judges of the Superior city courts to establish rules of practice, not inconsistent with its own provisions, which should be binding upon all courts of records, except the Court for the Trial of Impeachments and the Court of Appeals.

In pursuance of this authority, certain "general rules of practice" were adopted in convention, in October, 1877, and went into effect on January 1st, 1878.

Among them was Rule 10, which is as follows:

"An attorney may be changed by consent, or upon application of the client upon cause shown, and upon such terms as shall be just, by order of the court or a judge thereof, and not otherwise."

The procedure of Surrogates' courts was subjected to these rules by one of the statutes amending the Code, and making those tribunals courts of record (*L. 1877, ch. 416*).

There can be no question, therefore, that, since September 1st, 1877, the Surrogate has had authority to direct substitution of attorneys in proceedings pending before him, upon such terms as to compensation for professional service of the retiring attorney, as seem reasonable and just.

It was for the purpose of ascertaining the value of the service rendered by Mr. Chatfield that the reference was originally ordered, in this proceeding.

Mr. Marsh was, therefore, lawfully directed to take testimony in the matter, and to return the same with his opinion.

The subsequent selection of Mr. Shepard, in place of Mr. Marsh, by stipulation of the parties, and the submission to him of the matter in dispute in pursuance of such stipulation, constituted him, even in the absence of an order of reference, a referee with all the powers possessed by the gentleman for whom he was substituted (Whalen v. Board of Supervisors of Alb. Co., *6 How. Pr.*, *278;* Ludington v. Taft, *10 Barb.*, *452;* Nason v. Ludington, *56 How. Pr.*, *172;* Bonner v. McPhail, *31 Barb.*, *111*, *115;* Leaycraft v. Fowler, *7 How. Pr.*, *259*, *260*).

The terms and character of the order under which Mr. Shepard acted plainly negative the notion that the submission to him was an arbitration. Neither he nor the gentleman in whose stead he was appointed was authorized to determine anything absolutely or finally. That rested solely with the court subject to whose confirmation or rejection the report was directed to be made.

The reference was really instituted for the purpose of obtaining information to aid the court in reaching a just conclusion.

Upon the coming in of Mr. Shepard's report, the Surrogate was at liberty to accept its conclusions and recommendations, in whole or in part, or to set them aside altogether. He adopted the latter course, and thereupon made a new order of reference, the fruit of which is the report of Mr. Ruggles now under consideration. This order was within the jurisdiction of the court, whether the proceedings before Mr. Shepard are to be regarded as having been had before a lawfully constituted referee or not.

If not, then such proceedings not being an arbitra-

tion were *coram non judice* and void, and the Surrogate was at liberty, especially in the absence of a withdrawal of the submission of the claim in question, to determine the value of counsel's services upon affidavits, or upon a trial before himself or a referee, in the same manner as he could have done at the outset. The permission, accorded to the parties, of offering in evidence the testimony taken before Mr. Shepard was in accordance with the practice often resorted to in references of this character, and was entirely unobjectionable. It only remains to be considered whether the conclusions reached by the referee are warranted by the evidence.

The testimony of the witnesses called on the part of the claimant, as to the value of his services, was in most instances given in response to inquiries which embraced, besides the services in question, others not within the proper scope of the investigation. It is fair to assume that the value of such other services entered into the estimates which were given by these witnesses. Opposing evidence, on the other hand, seems to have been for the most part fairly directed to the question of the services which were properly the subject of contention. With the nature and extent of those services the witnesses were many of them familiar, having been themselves engaged in the litigation in which they were rendered. It is, therefore, natural that the referee should have given their estimates a preference, and he has apparently accepted them as the basis of his conclusions.

Those conclusions involve simply a question of fact, and it seems unnecessary for me to review in detail the

evidence by which that question must be determined. The opinions of the respective attorneys concerning the value of Mr. Chatfield's services did not furnish the sole standard by which that value could properly be tested. The testimony before him, as to the nature and extent of the labors which counsel had performed, could properly be considered by the referee, in connection with the conflicting estimates of counsel.

The Supreme court of the United States have lately held, in the case of Head v. Hargrave (*4 Morrison's Transcript, 440*), that, when a jury is called upon to determine the value of legal services, the judgment of attorneys who give their opinions in the premises need not be accepted as controlling, but that jurors are at liberty to consider the nature of the services rendered, the time occupied in their performance and other attending circumstances, and to apply their own experience and knowledge in arriving at a verdict. If this were not permissible, it would be well nigh impossible to reach a conclusion in litigations of this nature. That fact was never more clearly demonstrated than in this very case, the estimates varying, if I remember aright, from $1,000 to $50,000. Upon considering all the evidence, I see no reason for dissenting from the findings of the referee, and an order may, therefore, be entered in accordance with his report.