### *In re* SMITH'S ESTATE.

*(Surrogate's Court, New York County.* November, 1890.)

1. EXECUTORS AND ADMINISTRATORS—ACCOUNTING—COMPENSATION OF COUNSEL.
> Code Civil Proc. N. Y. § 2561, provides that the surrogate, on rendering a decree, may allow as costs, in addition to the disbursements, a sum not exceeding $70, etc. Section 2562 provides that, in addition to such sum, the surrogate may allow an executor or administrator, on an accounting, a sum for counsel fees, and other expenses, not exceeding $10 for each day occupied in the trial, and necessarily occupied in preparing his account for settlement. *Held*, that an accounting party was not limited to the provisions of those sections in remunerating his counsel, but might expend a proper sum for that purpose, which should be included in his accounts, and the correctness of which might be contested by the parties interested.

2. SAME.
　　To justify such expenditures, it must appear that services beyond the ordinary preparation of the account, or for trial, were rendered, and were necessary.

Settlement of the accounts of the administrator of William Smith, deceased. For reports of other proceeding in the matter of the estate of said decedent, see 4 N. Y. Supp. 467; 7 N. Y. Supp. 327, 948. Code Civil Proc. § 2561, provides: "In a case other than one ·of those specified in the last section, the surrogate, upon rendering a decree, may, in his discretion, fix such a sum, to be allowed as costs, in addition to the disbursements, as he deems reasonable, not exceeding, where there has not been a contest, twenty-five dollars, or, where there has been a contest, seventy dollars, and, in addition thereto, where a trial or hearing upon the merits before the surrogate necessarily occupies more than two days, ten dollars for each additional day, and, where a motion for a new trial is made before the surrogate. if it is granted, seventy dollars, if it is denied, forty dollars." Section 2562 provides: "In addition to the sums specified in the last two sections, the surrogate may, in his discretion, allow to an executor, administrator, guardian, or testamentary trustee, upon a judicial settlement of his account, or on an intermediate accounting required by the surrogate, such a sum as the surrogate deems reasonable, for his counsel fees, and other expenses, not exceeding ten dollars for each day occupied in the trial, and necessarily occupied in preparing his account for settlement, and otherwise preparing for the trial."

*Evarts, Choate & Beaman,* for administrator. *M. M. Budlong,* for contestants.

RANSOM, S. The sole objection raised to the account under consideration is the item therein for services of counsel. The *gravamen* of the objection is that these services were rendered in a proceeding for an accounting, and that the personal representative is confined to sections 2561, 2562 of the Code of Civil Procedure for remuneration of his counsel. In other words, that, without regard to the value of the services rendered, the character of the litigation, the size of the estate, the question or the amount involved, he can pay his counsel not exceeding $10 per day for the actual number of days spent upon the accounting, and that, if he does compensate him at a higher rate, he cannot be indemnified from the funds of the estate. In proceedings in the surrogate's court, it is very frequently the case that the services rendered are amply compensated by the statutory allowance, and it may happen in some instances that an allowance up to the limit prescribed ˙would be excessive, but the cases are numerous˙where the allowance which the surrogate may make upon the entry of decree, by way of costs, is grossly inadequate. In 1 Conn. Sur. 564, the surrogate, in his remarks to the˙ bar, commenting on the impossibility in every instance of compensating counsel by an allowance made by way of costs on the entry of decree, said: "It is the duty of the executor to employ and pay, as a matter of independent private contract between himself and the attorney, such compensation as the attorney fairly earns, and that amount of money should go into his account, and, when presented, would be allowed by the surrogate out of the estate, if fair and reasonable. It is a misapprehension on the part of the bar to suppose that attorneys can get adequate compensation under what is known as ˴ a *per diem* allowance.' ＊ ＊ ＊ They should have obtained their pay from their clients before, and put it in the account." And it is the practice to require information upon this point upon the entry of the decree; for, in taxing costs, the surrogate of this county requires information upon the question whether compensation has been paid out of the funds of the estate for or on account of the services specified in the bill, and the printed form of affidavit supplied in this court contains an averment on this point. In *Re Bailey,* 47 Hun, 477, the general term, Judge PARKER writing the opinion, say: "While the

authority of the surrogate to award costs is thus limited by statute, executors or administrators are in nowise precluded from employing counsel to give them necessary legal assistance in the management of their trusts, or from compensating counsel according to the value of the services rendered. For payment so made, a claim may be made for reimbursement out of the funds of the estate." In this case, the services were rendered by the attorney, not for the protection and benefit of the estate, but they were solely for the benefit of the executor in an action brought against him for misconduct in his office as executor, in which contest he was successful. Numerous cases have been cited by counsel for objector to support his contention. *In re Clark*, 36 Hun, 301, holds simply that an executor is entitled to trial days where a reference has been had in the same manner as if the trial had occurred before the surrogate. Also, that the Code does not contemplate an allowance for days on which adjournments occurred without any actual hearing. It is apparent that the case is not pertinent to the point presented. In *Harward* v. *Hewlett*, 5 Redf. Sur. 330, the account contained a charge of $75 for the expenses of final accounting and services rendered to the executor by his attorneys. Surrogate LIVINGSTON said: "The costs of this accounting have no place in the account, as they must first be fixed and allowed by the decree. If any charge is made for counsel fees paid in this proceeding, it should be separately stated, so that the court may judge whether it exceeds the limit fixed by section 2562 of the Code." Counsel for contestant refers to this case as the only one where the executor has taken the course pursued by the administrator herein. He evidently has not seen the decision of the general term in the *Case of Bailey*, *supra*. The character of the services covered by the $75 is not mentioned in the opinion, nor in the statement preceding the same, and we are therefore in the dark as to whether the services were such as would merit additional compensation beyond the costs to be awarded upon the entry of the decree.

*Walton* v. *Howard*, 1 Dem. Sur. 103, cited by counsel for contestant as in favor of his contention, seems to me to be authority to the contrary. This is a decision by Judge ROLLINS, rendered in August, 1882, and is the first case wherein he considered the state of the law as to allowances, and sets forth at length his views with reference to the power of the surrogate, under sections 2561, 2562. After referring to those sections, and the restrictions imposed thereby, Judge ROLLINS says: "It need scarcely be said that the statute, which has thus regulated the authority of the surrogate to award costs, does not preclude executors from employing counsel to give them necessary legal assistance in the management of their trusts, or from rewarding the services of such counsel according to their value, and without reference to the limitations of the Code of Civil Procedure. For payment so made, such an officer may, of course, present to the surrogate his claim for reimbursement out of the funds of the estate. Such claim may justly form, as it often does form, one of the items with which he credits himself in his accounts, and, so presented, it is laid bare to the scrutiny of all persons interested in the estate, may be objected to, like all other items, by any party who chooses to contest it, and will be allowed, or disallowed, according as it is ascertained to have been a proper or an improper disbursement. *Gilman* v. *Gilman*, 6 Thomp. & C. 214; affirmed, 63 N. Y. 41.

"Whether upon a final accounting such payment to counsel can ever be sanctioned as a charge against the estate when it recompenses services which have already been the subject of taxation by the surrogate, and for which the accounting party has been granted the statutory allowance, need not be here determined.

"All that is now necessary to maintain is the proposition that, however distinguished may be the counsel, and however valuable his services, the surrogate has no power to award, under any circumstances, a larger compensation than ten dollars per day, in addition to seventy dollars.

"This is, no doubt, in many instances, a very meagre and insufficient award, far less than the court would feel bound to allow in the exercise of a wider discretion; but it is the maximum reward which the law has established, and that law, both in its letter and spirit, must be obeyed and respected."

The meaning of the surrogate in the two paragraphs next preceding the last is not entirely clear. In my opinion, this case cannot be regarded as authority against the conclusion I have reached. The surrogate expressly refrains from passing upon the precise point, but all the intimations therein are favorable to the conclusion I have reached. In *Hall* v. *Campbell*, 1 Dem. Sur. 415, the executors sought to retain from the balance in their hands $280 paid to a book-keeper for making up the accounts, in addition to counsel fees authorized by section 2562. This claim was disallowed. The case is not pertinent to this controversy.

Previous to the Revised Statutes, it was not the practice of the surrogate's court to give costs in favor of one party against another in testamentary matters. Costs were given by the ecclesiastical courts of England in such cases, both in original suits and on appeals, but it seems that such a practice was never adopted in this state. By the Revised Statutes, the legislature changed the law in this respect, and enacted the law as it existed in the ecclesiastical courts of England at the time of the settlement of this state. Although no fee-bill was expressly adopted by statute for advocates and proctors in the surrogate's court, it was not the intention of the legislature to leave it to the several surrogates to make an arbitrary allowance for services and counsel fees in each particular case, to be paid by one party to another, or out of the estate which is the subject of controversy, and without reference to the taxable costs allowed for similar services in other courts. In the taxation of costs and counsel fees of the proctors and advocates upon the settlement of the account of an executor or administrator before the surrogate, the taxable charges therefor cannot exceed those which are allowed by law to solicitors and counselors in this court in similar cases. *Halsey* v. *Van Amringe*, 6 Paige, 18. This last case, it seems to me, recognizes the difference between allowances to be made to an executor for counsel fees as remuneration for services rendered, and the taxable costs which may be awarded against one party in favor of another. In other words, it recognizes the difference between costs as such and the sum included in the account for services rendered by counsel. While it would not be proper for the surrogate to make an allowance of the character claimed in this case to be charged against a contestant, it would be proper for the executor to pay his counsel such amount, if justified by the proof as to services performed. To present the idea in a different form, should the surrogate determine that one or other of the parties to the contest should be charged with costs of the proceeding, he could only charge him with the taxable costs at the rate specified in the sections of the Code, and it would be improper to charge him with whatever sum might be a suitable reward for the attorney's services. This is in analogy with the procedure in common-law courts. A successful plaintiff, for instance, does not recover from the defendant for costs the entire sum which he, the plaintiff, may be required to pay his counsel, but only statutory costs. And it is elementary that costs are not intended as indemnity, but only partial reimbursement. In the case of *Willcox* v. *Smith*, 26 Barb. 330, the court said: "It seems to be well settled that an executor or administrator is not entitled to charge the estate he represents with a counsel fee paid by him upon the final settlement of his accounts before the surrogate, or for drawing up his accounts in a proper and legal form on such a settlement; and also that the surrogate has no authority to make an arbitrary allowance to him in lieu of the compensation directed by the statute to be paid to advocates and proctors in surrogates' courts, where the sum is to be paid as costs in the suit or proceeding, either by the adverse party or out of the fund in litigation. *Burtis*

v. *Dodge*, 1 Barb. Ch. 77; *Halsey* v. *Van Amringe*, 6 Paige, 12; *Western* v. *Romaine*, 1 Bradf. Sur. 37. This rule does not conflict with the one, now statutory, which authorizes the surrogate to allow executors and administrators 'for their actual and necessary expenses,' which are 'just and reasonable,' in the management of the estates committed to them, (see 2 Rev. St. 93, § 58; Laws 1849, c. 160;) such as expenses incurred by them in employing agents and clerks, where their services are beneficial to such estates, (*McWhorter* v. *Benson*, Hopk. Ch. 28; *Vanderheyden* v. *Vanderheyden*, 2 Paige, 287; *In re Livingston*, 9 Paige, 440, 2 Denio, 575; *Glover* v. *Holley*, 2 Bradf. Sur. 291, 294;) and such as costs paid in actions brought by them in good faith to recover debts supposed to be due to their decedents, when the results show that different modes of proceeding would have been more beneficial to the parties interested in the estates, (*Collins* v. *Hoxie*, 9 Paige, 81.) The two rules already mentioned harmonize, and they are founded on solid reasons. It is not often that executors or administrators need the services of counsel in making final settlements of their accounts before the surrogate, if they have properly managed the estates in their hands, and are diligent in making such settlements; and where they are negligent, or permit their accounts to become confused, or suffer the estates under their control to decrease unnecessarily, they ought to pay counsel out of their own funds for assisting them in closing up their trusts. And the reasons are too obvious to be stated which uphold the rule that permits the surrogate to allow them all actual and necessary expenses incurred by them, which appear reasonable and just, in bringing and defending actions, in good faith, with the expectation of benefiting the estates under their control, and in managing such estates solely for the benefit of those interested in them." In *Burtis* v. *Dodge*, 1 Barb. Ch. 77, referred to by the court above, the executor charged in his account $50 as a fee to his counsel upon final settlement. The court held, (page 91:) "Neither was the executor entitled to charge the estate with a counsel fee upon the final settlement of his account before the surrogate, or for drawing up his accounts in a proper and legal form on such final settlement. The whole was a part of the proceeding for the settlement of the account of the executor; and the statute having fixed the allowances which are to be made to advocates and proctors in surrogates' courts, when they are to be paid as costs in the suit, either by the adverse party or out of the funds in litigation, the surrogate is not authorized to make an arbitrary allowance to the executor in lieu thereof. Here, the surrogate had the power to award costs to the executor, to be paid out of the estate of the testator, or by Burtis personally, if he thought this final accounting had been rendered necessary by his perverseness. He has not thought proper to do so in this case, except to the extent of his own fees, which he has awarded against Burtis personally, by deducting them from the balance found due to him upon the accounting. If it was a proper case to allow the executor for the expenses of his proctor and advocate upon the accounting, the surrogate should have taxed their costs at the rates of allowance fixed by the act of 1837." In *Osborne* v. *McAlpine*, 4 Redf. Sur. 6, Surrogate CALVIN took occasion to condemn the practice theretofore prevailing of making an allowance to counsel for executor, etc., on final accounting, to cover the professional services rendered during the progress of administration, and prior to the proceeding initiating the final account. He said: "If the representative of an estate shall employ counsel, which he clearly has the right to do, it is the duty of such counsel to present his account for payment before the final accounting, and for the representative to fix upon the amount which is reasonable to be paid, and pay it on his own responsibility, and credit himself with such payment in his final accounting. This will enable the executor in the first place to scrutinize the charges, and will give the parties in interest an opportunity to interpose objections, if it shall appear to be exorbitant." In *Carroll* v. *Hughes*, 5 Redf. Sur. 337, an accounting party

·claimed credit for sums paid for counsel fees, and the surrogate held that so much of the charge for· legal services as related to the accounting must be separately stated, so that the court may judge whether it exceeds the limit ·fixed by section 2562 of the Code, and there should be proof by affidavit of the number of days necessarily occupied in preparing the account for settlement. *In re Miles*, 5 Redf. Sur. 110, was an account had upon the application of a legatee. The petitioner and respondent were the only parties interested in the estate, and for that reason Surrogate CALVIN held that it was a "judicial settlement." He held that the executors were entitled to $25 and three days for preparing account, but that they were not entitled to any allowance for attendance at court, examination of the law, and the drawing and settling of the decree, for the reason that they were not devoted to "preparation for the trial." He says: "The theory of the codifiers seems to have been that the twenty-five dollars should cover all the proceedings, except the preparation of the account, where no trial was had; unless, pernaps, where objections were ·filed, and reasonable preparations made, and, before the trial commenced, the objections ·were withdrawn." *Chatfield* v. *Hewlett*, 2 Dem. Sur. 191, was a contest over the substitution of an attorney. No question whatever was made but that the retiring counsel was entitled to a lien for whatever his services might be worth, independent of the *per diem* allowance under the Code. None ·of the authorities cited by·contestant seem to maintain his position, and independent investigation has not disclosed any reported decision in conflict with the opinion I· have formed.

·  ·Many of the problems arising in the preparation of the account could not be correctly solved by a layman, as, for instance, the marshaling of assets, to ·determine whether certain disbursements shall be charged against income or principal, the relative rights of life-tenants and remainder-men, questions as to dividends, and numerous other points that are frequently the subject of litigation, often requiring the construction of wills, any and all of which necessitate the advice of experienced counsel. Not infrequently the most eminent and experienced counsel in such matters differ as to their proper disposition. When we reflect upon the strict accountability to which such officers are held by·law, and that the statutory commissions received by executors, administrators, etc., are meager and entirely insufficient compensation for the ·services rendered, as has been frequently remarked in judicial decisions, it seems to me entirely improbable that the legislature intended that the provisions of sections 2561, 2562, of the Code were intended to indicate the exclusive source of authority for compensation of counsel for work of this character. · To maintain such proposition, it must be contended that in a large class of cases the administrator must take the grave responsibility of properly administering his trust for the meager commission allowed by the statute, on the advice of counsel to whom he cannot pay more than $10 per day, or employ counsel upon whose reputation for learning he may confidently rely, and pay him from his own pocket. It must be remembered in this connection that executors, etc., are personally liable to their counsel, and cannot be made liable in their representative capacity, (*Willcox* v. *Smith*, *supra;* *Mygatt* v. *Willcox*, 1 Lans. 55, 45 N. Y. 306;) that an allowance made by the surrogate for counsel is not conclusive as between the attorney and client, and the attorney may sue and recover from the executors the value of the services rendered, together with his disbursements, (*Mygatt* v. *Willcox*, *supra.*) It is by no means an uncommon occurrence that contests on the settlement of accounts would have been avoided had the proper investigation been made by counsel as to the state of the law before making up the same, where, if an experienced lawyer had been employed, the estate would have been saved referee's and stenographer's fees, the *per diem* of counsel, and other expenses incident to the contest of the account. Until I am differently instructed by the appellate courts, I shall hold that an accounting party·is not confined to

the sections of the Code (2561, 2562) in remunerating his counsel, but may expend such sums as he deems proper in that behalf, to be included in his accounts, and the correctness and propriety of which may be contested by the persons interested. I am supported in this conclusion by the clear distinction made by the legislature in its provisions with reference to the allowance to special guardians, and to the allowance made to an executor, administrator, or freeholder on a sale of real estate. In the case of a special guardian, he has no client to whom he may have recourse for any recompense he may deserve outside of the statutory costs, and the Code, therefore, very properly allows the surrogate to make him such allowance as his services merit, without a *per diem*, or other limit. No restriction is imposed upon the surrogate in making this allowance, for the reason that this is the exclusive source of compensation.

Having reached this conclusion, it remains for me to determine what services included in the voucher filed are of a character to merit this extra compensation. To justify such items in an account, it must appear that services beyond the ordinary preparation of the account, or for trial, were rendered, and were necessary. An executor could not in an ordinary formal account, involving no intricate question, employ eminent and expensive counsel, and pay them extravagant fees. If the services beyond an ordinary trial or account were such that they could very well have been rendered by an attorney of average learning and ability, he cannot pay him large fees, and be reimbursed therefor. On the other hand, if the estate is large, and the question at issue important, the accounting party is not limited to the employment of counsel, whose services may be obtained for a fee of $10 a day. He may engage counsel equipped by learning and experience to conduct litigations of magnitude, and recompense him with a fee corresponding to his services, and the interest at stake. In the case at bar, a considerable portion of the services included in the voucher, and testified to in greater detail on the trial, were rendered strictly in the administration of the trust, and there can be no doubt whatever that they are allowable, unless the sums paid were excessive. Of this class were the consultations as to his conduct prior to the account, the transmission of funds abroad, the McCabe mortgage, and the tax matter. The proof as to services rendered is not as detailed as I would like in order to pass upon the propriety of the charge made, and I am compelled, to some extent, to rely upon my own experience as to what labor must have been entailed by the proper conduct of the litigation. I believe, however, that a fee of $1,500, in addition to the full amount of disbursements claimed, is sufficient recompense for the services shown to have been performed. This sum is fixed on my determination that no costs will be allowed on the entry of the decree for services up to the termination of the last reference.